## VELVIN *v.* STATE.

### Opinion delivered November 11, 1905.

TRIAL—INSTRUCTION—WHEN NOT MISLEADING.—An instruction open to criticism, when standing alone, will not be ground for reversal if, taken in connection with the evidence and the other instructions, it is clear that the jury could not have been misled.

Appeal from Lafayette Circuit Court; CHARLES W. SMITH, Judge; affirmed.

*Searcy & Parks*, and *Smead & Powell*, for appellant.

*Robert L. Rogers, Attorney General*, for appellee.

RIDDICK, J. This is an appeal from a judgment convicting Arthur Velvin of the crime of voluntary manslaughter, and sentencing him to seven years imprisonment in the penitentiary for killing W. G. Smith by shooting him with a gun. Smith attached a crop of a negro tenant in which a brother of Velvin,

who had been recently killed in Texas, had some interest. The defendant, Arthur Velvin, went to the home of Smith, as he says, to settle the matter in some way. The evidence shows that there was some ill feeling between the two parties, and Velvin took with him a Winchester repeating shotgun loaded with buckshot. He found Smith in a field something over a hundred yards from his home, gathering peas. His wife and young son were with him. The wife of Smith testified that when the defendant came up to them he had his gun in his hand, and was only ten or fifteen steps away when they noticed him. Smith was down on his knees, picking peas, and Velvin said to him, "Get up, you damned old son-of-a-bitch! I have got you!" She stepped between them, and asked Velvin to let him alone. Defendant said to her: "Stand back, God damn you, or I will kill you!" Smith then started to run towards his house. Velvin followed him a short distance, and ordered him to stop, and when he did not do so shot him. The testimony of the boy was substantially the same as that of his mother. He testified that the first words of Velvin to Smith were: "Get up from there, you damned old son-of-a-bitch! I have got you, and am going to kill you!" That his father ran, and was shot down. On the other hand, Velvin testified that he did not go to the field to hurt Smith, and did not take the gun with that intention, but only intended to talk with him in an effort to make some arrangement by which the attached crop might be gathered. He testified that he got over the fence into the pea patch a short distance from Smith; that he had only taken a step or two towards him when Mrs. Smith began to scream; that the boy ran towards the house for a gun; that he told Smith not to run, that he wished to talk with him, but that Smith ran to the road, and toward the house, calling for his gun; that defendant followed after him, telling him to stop, until he saw the daughter of Smith coming from the house towards her father with a Winchester rifle, when the defendant shot Smith, intending to shoot him in the legs to prevent his getting the gun from his daughter.

There was other testimony tending to show that at the time the shot was fired the daughter of Smith was coming towards him with a rifle, and testimony tending to show that she had no gun, and that this statement of the defendant was not true.

A number of exceptions were saved on the trial, but the only ground of reversal urged in brief of counsel is that the court erred in giving instruction number fifteen at the request of the State.* It is contended that the evidence does not show that the defendant made any assault on Smith previous to the shooting, and that there was no evidence upon which to base that instruction, and that it was misleading.

But there was evidence tending to show that Velvin with a loaded gun in his hand came to the field where Smith was at work, and used threatening language toward him such as might well have put a reasonable person in the same situation in fear of his life. Smith was on his own premises, and, being put in fear in that way, he had the right to secure means of protecting himself. His going towards his house and calling for a gun under those circumstances did not, to quote the language of this instruction, justify the defendant in taking his life "unless the defendant in good faith had abandoned the difficulty, and had done all within his power, and consistent with his safety, acting as a reasonable person, to avert the danger to himself and avoid the necessity of killing the deceased."

It was immaterial whether defendant had committed a technical assault on Smith or not. In that respect the instruction is too favorable to defendant. If he wrongfully put Smith in fear of his life, defendant had no right to shoot him down, because he was endeavoring to obtain a weapon by which to protect him-

---

* "15. You are instructed if you believe from the evidence in this case beyond a reasonable doubt that the defendant, on the evening of the killing, went to where the deceased was at work in his pea patch, and, without provocation at the time on the part of the deceased, assaulted the deceased with a shotgun in a violent and threatening manner, such as would put a reasonable man in the situation of the deceased in fear of losing his life or of receiving great bodily injury, and that the deceased was aroused to such sense of fear by said assault, then the deceased had a right to seek assistance of weapons with which to defend himself, and the fact that he called for some one to bring him a gun, or attempted to run to his house for the purpose of procuring a gun with which to shoot the defendant, would not justify the defendant in taking the life of the deceased unless the defendant had abandoned in good faith the difficulty, and had done all within his power, and consistent with his safety, acting as a reasonable person, to avert danger to himself and avoid the necessity of killing the deceased."

self until the defendant had in good faith abandoned the quarrel and done all in his power, consistent with safety, to avoid the necessity of the killing. As applied to the facts in this case, the instruction may be subject to some criticism; for it might well have omitted any reference to an assault, and told the jury that if the defendant came to the field of the deceased with a gun, and by the use of threatening language put deceased in fear of his life, he had no right to shoot the deceased until he had used all means within his power, consistent with safety, to avoid the danger and avert the necessity of taking life. But when this instruction is read in the light of the evidence, with the fifth and sixth instructions given for defendant, (a) it is very clear that it could not have misled the jury to the injury of the defendant.

The evidence of defendant's guilt is clear and convincing, and would have sustained a verdict for a greater crime. On the whole case, we are of the opinion that the judgment should be affirmed. It is so ordered.

---

(a) "5. The court instructs the jury that if you believe from the evidence in this case that the defendant, Velvin, went to the house of the deceased, Smith, for the sole purpose of adjusting and settling a business matter in which both were interested, and with no purpose of killing deceased, and that when defendant arrived the deceased called for his gun, and that a Winchester rifle was being brought to him, the deceased at the time running to the party bringing said gun, and at that time it appeared to defendant as a reasonable person that he was in danger of receiving great bodily harm or of losing his life, he had a right to defend himself then and there, and was not required to wait until deceased reached his gun and turned upon him."

"6. The court instructs the jury that if you find from the evidence that at the time the defendant first fired the shot that killed the deceased it appeared to him, acting as a reasonable person, without fault or carelessness on his part, that the danger at that time to him was so urgent and pressing that it was necessary to kill the deceased to save his own life to prevent his receiving great bodily injuries, and that he acted in good faith, then you must acquit the defendant, though the jury may believe that it was not necessary for the defendant to have fired the shot."