HOARD *v.* STATE.

Opinion delivered July 23, 1906.

HOMICIDE—SELF-DEFENSE.—Under Kirby's Digest, § 1797, providing that to justify a killing "it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of re-

venge," it was not error to instruct the jury that one who killed
another was justified in defending himself if it appeared to him
"acting as a reasonable person," without fault on his part, that
he was in danger of losing his life or receiving great bodily harm,
as the law presumes, where nothing to the contrary is shown, that the
accused is of ordinary reason and holds him accountable accordingly.

Appeal from Ouachita Circuit Court; *Charles W. Smith,*
Judge; affirmed.

*H. P. Smead,* for appellant.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,*
for appellee.

RIDDICK, J.  The defendant, W. H. Hoard, was indicted by
the grand jury of Ouachita County for murder in the first degree
for killing Ely Ford by shooting him with a pistol.  On a trial
he was convicted of voluntary manslaughter, and his punishment
assessed at two years in the penitentiary.  From this judgment
he appealed.

The defendant and Ford were negro barbers, working in the
same shop.  Some altercation having arisen between them, Ford,
who was the larger man of the two, started towards the defendant
with a stick in his hand, and defendant shot him twice with a
pistol.  At the time the shots were fired Ford was some seventeen
or eighteen feet away with two of the chairs of the shop between
him and defendant.  The first shot missed Ford, and the wit-
nesses say that he stopped and seemed to be trying to get behind
a chair when the second shot was fired.  This shot entered his
head, and produced almost instant death.

The defendant asked the court to instruct the jury that if
"it appeared to defendant without fault on his part that he was
in danger of losing his life or receiving great bodily harm, then
in that event he was not required to wait until the deceased got in
reach of him with the stick before defending himself."  The
court modified this instruction by inserting therein the words,
"acting as a reasonable person."  The law, as thus declared, was
that the defendant had a right to defend himself if it appeared to
him "acting as a reasonable person, without fault on his part, that
he was in danger of losing his life or receiving great bodily
harm."  Counsel for defendant contends that the trial court erred
in modifying the instruction in that way.  But if it appeared to
defendant without fault on his part that he was in danger, that

is to say, if defendant acted with caution in coming to the conclusion that he was in danger, he then acted as a reasonable person in coming to such conclusion. So it seems to us that the words added to the instruction did not change the sense of it, the phrase added being only a repetition in other words of what was said before. The only error committed by the court on adding these words was the rhetorical one of tautology, which in itself is not prejudicial, for the meaning of the instruction is not thereby altered.

If it had been shown that the defendant was a weak-minded person bordering on idiocy, then such a reference to a reasonable person might have been prejudicial, for the law is not so unreasonable as to require that one bordering on idiocy should in defending himself act as a reasonable person. But, when nothing is shown to the contrary, the law presumes the defendant to be a person of ordinary reason, and holds him accountable as such. In such cases our statute, as well as the decisions of this court, show that the trial court did not err in telling the jury that the defendant must act as a reasonable person. In other words, he must not only believe, but he must have reasonable cause to believe, that he is in immediate danger of loss of life, or of receiving great bodily harm, before he can lawfully slay his assailant. Kirby's Digest, § 1797; *Palmore* v. *State,* 29 Ark. 248; *Brown* v. *State,* 55 Ark. 593; *Velvin* v. *State,* 77 Ark. 97; *Allen* v. *United States,* 164 U. S. 498. This is the law in most of the States, and is thus stated in a recent work: To justify taking life in self-defense, "it should appear that the circumstances in which the slayer was placed were such as would have produced the fear of death or great bodily harm in the mind of a reasonable man— one reasonably prudent, courageous and self-possessed. To justify the taking of human life, the law makes no discrimination in favor of a coward or a drunkard or any particular individual, but the circumstances must be such as to justify the fears of a reasonable man." 25 Am. & Eng. Enc. Law (2 Ed.), 262, 263.

Mr. Wharton, in his work on Criminal Law, makes a labored argument to show that this test of a reasonable man is inadequate. But, while we can agree to much that he says, some of his questions and illustrations indicate that he had an erroneous conception of the rule he is combating. For instance, to quote his language,

after stating that some of the courts hold that the danger must be such as would move the fears of a reasonable man, he proceeds as follows: "But who is the 'reasonable man' who is thus invoked as the standard by which the apparent danger is to be tested? What degree of reason is he supposed to have? If he be a man of peculiar coolness and shrewdness, then he has capacities which we rarely discover among persons fluttered by an attack in which life is assailed; and we are applying, therefore, a test about as inapplicable as would be that of the jury who deliberate on events after they have been interpreted by their results. Or, if we reject the idea of a man of peculiar reasoning and perceptive powers, the selection is one of pure caprice, the ideal reasonable man being an undefinable myth, leaving the particular case ungoverned by any fixed rule. And that this ideal reasonable man is an inadequate standard is shown by a conclusive test. Suppose the ideal reasonable man would at the time of the conflict have believed that a gun aimed by the deceased was loaded, whereas in point of fact the defendant knew the gun was not loaded; would the defendant be justified in shooting down an assailant approaching with a gun the defendant knows to be unloaded, simply because the ideal reasonable man would suppose the gun to be loaded? No doubt that in such case no honest belief of the ideal reasonable man would be a defense to the defendant who knew that the belief was false and that he was not really in danger of life. And if the belief of the ideal reasonable man be not admissible to acquit, *a fortiori* it is inadmissible to convict." Wharton on Crim. Law (10 Ed.), § 489. Now, this argument and illustration of the learned author have often been quoted to show the fallacy of the rule which tests the conduct of the defendant by that of a reasonable person, but it does not seem to us to be of much force. First, his questions as to who is the reasonable man by whose conduct that of the defendant is to be judged, and what degree of reason must he possess, are answered by his own statement in the previous section that he must be a man of ordinary reason. This is the law both in civil and criminal procedure. When, in order to determine whether one has been guilty of negligence or not, it becomes necessary to test his conduct by comparing it with what we should expect of a reasonable person under the same circumstances, the

reference is always to a person of ordinary reason and prudence. To quote the words of another author on this point, "the standard of duty is not the foresight and caution which this or that particular man is capable of, but the foresight and caution of a prudent man—the average prudent man, or as our books rather affect to say, a reasonable man standing in this or that man's shoes." Webb's Pollock on Torts (Am. Ed.), 540.

Second, the illustration which Mr. Wharton makes in order to show that the test of a reasonable man is inadequate seems to be based on the erroneous assumption that the "reasonable man" referred to in the rule is some bystander who might have knowledge of material facts of which the defendant is ignorant, or be ignorant of facts of which the defendant had knowledge. But it is impossible, under the rule, to make such an assumption, for under the rule the supposed reasonable person by whose conduct that of the defendant is tested is one placed in the same situation as defendant, knowing what he knows or ought to know, and nothing more, and beset by the same assailant under the same circumstances. It is therefore impossible to assume under this rule that the defendant might honestly believe that the pistol in the hands of his assailant is loaded, while the reasonable person by whose conduct that of the defendant is tested knows it to be unloaded, or that the reasonable person should believe it to be loaded, while the defendant knows to the contrary. The question for the jury under this rule is whether the defendant acted as a man of ordinary prudence and caution would have acted under the same circumstances. In determining that question, only those facts known to the defendant, or which he as a man of ordinary prudence and reason ought to have known, are to be considered as part of the circumstances by which his conduct is to be judged. When we keep this in mind, it will be seen that for practical purposes there is little difference between this rule which judges the conduct of the defendant by that of a reasonable person placed in his situation and the rule which judges him by determining whether under the circumstances he acted without fault or carelessness. For, if you adopt the doctrine that the defendant must act without fault or carelessness, in other words without negligence, then, in order to determine whether he was guilty of negligence or acted with due care, you must compare his conduct

with what you would expect of a man of ordinary sense and prudence placed under the same circumstances, for that is the way a question of due care or negligence is determined. The definition of negligence itself shows that this is so. "Negligence," said Alderson, B., in a decision that has often been approved, "is the omission to do something which a reasonable man  *  *  * would do, or doing something which a prudent and reasonable man would not do." *Blyth* v. *Birmingham Water Works,* 11 Exchequer, 783.

It follows that if the guilt or innocence of the defendant depends on whether he acted without negligence, or, in other words, without fault or carelessness, then, in order to determine that question, you must compare his conduct with that which you would expect from a man of ordinary prudence and reason under the same circumstances. So by either rule you come at last to the question as to whether the defendant acted as a reasonable person should have done under the same circumstances; which shows that the rule is the same, and that the two ways of stating it amount in substance to the same thing. This view is supported by a large number of decisions of the courts of the different States and also of the United States. *Palmore* v. *State,* 29 Ark. 248; *Brown* v. *State,* 55 Ark. 593; *Fitzpatrick* v. *State,* 37 Ark. 257; *Velvin* v. *State,* 77 Ark. 97; *State* v. *Crawford,* 66 Iowa, 318; *State* v. *Row,* 81 Iowa, 138; *State* v. *Shreves,* 81 Iowa, 615; *People* v. *Williams,* 32 Cal. 280; *People* v. *Lynch,* 101 Cal. 229; *Commonwealth* v. *Woodward,* 102 Mass. 155; *Roden* v. *State,* 97 Ala. 55; *Allen* v. *United States,* 164 U. S. 492, 498.

In the last case cited above the Supreme Court of the United States said: "It is clear that to establish a case of justifiable homicide it must appear that something more than an ordinary assault was made upon the prisoner; it must also appear that the assault was such as would lead a reasonable person to believe that his life was in peril."

Illustrations of these two different ways of stating the law of self-defense may be found in our own decisions. In one of them the law on this point is stated substantially as follows:

"In ordinary cases of one person killing another in self defense it must appear to the defendant that the danger was so urgent and pressing that, in order to save his own life, or prevent

his receiving great bodily injury, the killing was necessary. And if it does so appear to him, and he acts in good faith under such belief without fault or carelessness, he will be excused, though it should turn out that he was mistaken in the belief of danger. But to justify the defendant he must act with due circumspection, and if there was no such danger, and his belief in the existence thereof be imputable to his own fault or carelessness, he is not excused, however honest the belief may be." *Smith* v. *State*, 59 Ark. 137; *Magness* v. *State*, 67 Ark. 594, opinion of BATTLE, J.

This statement of the law, as we have seen, is in accordance with the views of Wharton, and is also preferred by Bishop, who says that it is "more nicely in accord with the principles upon which the rule is founded." Bishop's New Crim. Law, § 305. Other decisions of this court follow the other form of stating the rule in substance as follows:

"In ordinary cases of one person killing another in self-defense it must appear to the defendant that the danger was so urgent and pressing that, in order to save his own life or prevent his receiving great bodily injury, the killing was necessary; and if it does so appear to him, and he acts in good faith under such belief, and has reasonable cause therefor, he will be excused, though it should turn out that he was mistaken in the belief of danger. But to justify the defendant there must be reasonable cause for his belief of danger; in other words, the circumstances under which the defendant acted must be sufficient to excite the fears of a reasonable person placed in the situation of defendant; and if there be no danger, and no reasonable cause for such belief, defendant will not be excused, however honest his belief may be." *Palmore* v. *State*, 29 Ark. 248; *Magness* v. *State*, 67 Ark. 607, opinion of WOOD, J.

While Mr. Bishop, in his able work on Criminal Law, states the law as laid down in *Smith* v. *State*, 59 Ark. 137, yet in a note he refers to the other form of stating it last above stated as found in *Palmore* v. *State*, 29 Ark. 248, and in the other cases before referred to, and says: "This statement of the doctrine is under the facts of most cases not in essence different from that in my text: namely, without fault or carelessness. But as a general doctrine it is believed to be less accurate and more likely to

mislead the jury." 1 Bishop's New Crim. Law section, 305, note 2.

It is easy to imagine a case where, as Mr. Bishop says, the statement of the law as found in *Palmore* v. *State* might mislead. For instance, if the defendant was a person bordering on idiocy or a boy just arrived at the age of legal responsibility for crime, it might be very unjust to test the conduct of such a person by that of a man of average judgment and reason. But such cases are exceptional, and we do not have one of that kind before us. For ordinary cases we think there is no substantial difference in these two ways of stating the rule, and consider it a matter of form that should be left to the taste and judgment of the trial judge. We have examined the question at greater length than its importance may seem to deserve, for the reason that there is some little conflict in our own decisions on this point.

Our conclusion is that no prejudicial error was committed. While there was provocation, the jury made allowances for it, and we think the evidence sufficient to support the conviction for manslaughter, and the judgment is therefore affirmed.

BATTLE, J., not participating.