STEVENS *v.* STATE.

Opinion delivered February 15, 1915.

1. WITNESS—IMPEACHMENT—EVIDENCE.—A witness may be impeached during a trial by being asked if he did not make contradictory statements to certain persons before the trial, but evidence of his probable reasons for making contradictory statements is collateral to the issue and inadmissible.

2. EVIDENCE—EXCLAMATIONS—RES GESTAE.—In a prosecution for homicide, evidence of spontaneous exclamations of deceased, made at the moment she was shot, are admissible as part of the *res gestae*.

3. EVIDENCE—EXCLAMATIONS OF DECEASED—OPINION.—In a prosecution for homicide, where the killing occurred in the night time, while evidence of exclamations made by deceased, at the time she was shot, that appellant had shot her, is admissible, it is proper to submit to the jury the issue as to whether the exclamations were the mere expression of opinion or the statement of a fact.

Appeal from Lee Circuit Court; *J. M. Jackson*, Judge; affirmed.

STATEMENT BY THE COURT.

The appellant and his wife had been separated about a month on account of domestic troubles. On the 16th of February, 1914, she was killed. Appellant was indicted for such killing, the charge being murder in the first degree. He was convicted and appeals to this court.

The proof on behalf of the State by the stepfather of Hattie Stevens, the deceased, tends to show that on the night of the killing appellant went to witness's house, where the deceased had been staying, and when appellant reached there his wife left. Appellant's conduct caused witness to inquire of appellant whether he intended to kill his wife, and he said he was not going to kill her or hurt her. Witness told appellant that he and his uncle's children had fixed to kill Hattie, and appellant made no reply. Later in the night the killing occurred.

Josie Cooper, the mother of Hattie, testified that after appellant and his wife had separated Hattie was staying at her house, and that when appellant was not there in the day he was there at night. Hattie moved to witness's house one Thursday and appellant came on Saturday and asked where his wife was, and where her bed was located, and about everything she had there. Witness told him, and appellant replied: "If she comes here it is all right, but I thought she went to her uncle's house and I was going to give her three days to get away." Appellant came to witness's house also on the night that Hattie was killed. At that time he carried with him a pair of pants for his son. Witness heard appellant say on that occasion that he was not going to hurt Hattie and not to be in any ways uneasy.

Hattie Stevens was killed at the house of one Ellen Vincent, where she had gone to attend a dance.

Witness Robert Davis testified that he was at the dance; he arrived there about 9 o'clock, and saw appellant there at that time. Appellant, when witness first saw him, was out of doors about four feet from the window. Witness next saw him about 12 o'clock standing at the corner of the house. This was about half an hour before the killing occurred.

On cross-examination the witness admitted that he had sworn in the justice court that he had not seen appellant at Ellen Vincent's that night, and, on redirect examination, he reiterated that he saw appellant at Ellen Vincent's on the night that Hattie was killed.

Buster Williams testified that he was at Ellen Vincent's on the night that Hattie was killed and saw the appellant there in the early part of the night before the play began. At that time he was in the house sitting down. He next saw him between 12 and 1 o'clock at the window in the east end of the house. Robert Hall was with witness, and they both saw appellant at the window. When they first went to the window appellant was right up against it. This time was about four minutes before the killing. Witness heard Hattie say, after she was shot, "Lord, have mercy; Lem's done shot me." When she said that she ran in the house and fell. She did not say anything after she fell.

On cross-examination, witness was asked by counsel for appellant if he had not stated to Mr. Roleson, in the presence of Mr. Harris, that the appellant was standing some four feet away from the window, and witness denied that he made such statement.

Robert Hall corroborated the testimony of Buster Williams as to seeing appellant at Ellen Vincent's and he further testified that between 12 and 1 o'clock he saw appellant standing close up to the window four or five minutes before the shooting occurred; that the moon was just rising above the tops of the trees, and that it was light enough for him to see appellant outside of the window, and that appellant was right at the window.

Other witnesses testified that Hattie Stevens exclaimed, immediately after being shot, "Lem's done shot me," and that she died without saying anything else.

It was shown that on Saturday evening before the killing appellant purchased some twelve gauge shells, and it was also shown that appellant had a twelve-gauge gun. It was also shown that appellant's gun had the appearance the next morning after the killing of having been fired within twenty-four hours; and there was mud on the stock of the gun.

One witness testified that about midnight she heard Hattie Stevens's voice speaking in an excited tone and

heard her scream; that immediately after the scream the gun fired.

Another witness testified that he had a talk with appellant a short time before the killing, and that appellant told witness the following: "I am going to see if I can make up with her, and if I can it will be all right, and if we don't get back together she will never be of much service to anybody else."

The deceased was shot with a shotgun in the right shoulder, from the back, with No. 2 or No. 3 shot.

Appellant introduced testimony tending to prove an *alibi*, and appellant testified himself, denying at length and in detail that he was present at Ellen Vincent's on the night of the killing.

The testimony showed that on the morning after the killing when appellant was arrested he was at the place where he lived and was at work. There was testimony tending to show that the gun was fired a distance of about thirty feet away.

Witness Harris, on behalf of the appellant, was asked if he heard the conversation between Roleson and Buster Williams in regard to what Williams said about seeing appellant standing some four feet from the window at Ellen Vincent's on the night that Hattie was killed, and witness testified that Buster Williams said "he was standing inside the window and looked out of the window and saw Lem standing about four or five feet from the window." Here the appellant offered to prove by witness Harris "that Roleson asked the said Buster Williams how it was that he could see defendant four or five feet out in the dark through the window glass when there was a light in the room; that said Buster Williams made no reply, but afterward, in justice court, a few hours later, he testified that the defendant had his face against the window glass." The court, over the objection of appellant, would not permit the offered testimony to be introduced.

Appellant, among others, asked an instruction which, in effect, told the jury that the evidence of the declara-

tion of deceased should be received with caution and weighed with care; that before the jury would be authorized to give such declaration of deceased any weight against the accused they should first find beyond a reasonable doubt that the language was used and that the deceased knew the truth of the declaration; that if there was a reasonable doubt that the deceased knew the truth of the statement, but was merely expressing a belief or opinion, such declaration should be disregarded in determining the guilt or innocence of the defendant. The court refused this prayer for instruction.

The court, at the instance of appellant, among others, gave the following instructions:

"1.   The court has permitted some evidence to go to the jury as to an exclamation said to have been made by the deceased just after she was shot. This testimony should not be considered by the jury in arriving at a conclusion as to whether the defendant did the shooting, unless the jury first find beyond a reasonable doubt that the deceased knew that it was the defendant who shot her. If the jury find that such exclamation was made upon a mere suspicion or belief that it was defendant who shot. they should disregard it. All the facts and conditions surrounding the parties at the time of the shooting should be taken into consideration by the jury in arriving at its conclusion."

"4.   In determining whether deceased knew the truth of her declaration or whether the same was made from opinion or belief, you may take into consideration all the facts and circumstances surrounding the event, including the interest of the deceased, her mental and physical condition at the time, the circumstances under which it was made, her means of knowing the facts stated by her and all the other evidence in the case should be considered by you in determining whether or not the statement so made was true."

*Roleson & McCulloch,* for appellant.

On appellant's objection to the admission of testimony as to the exclamation of the deceased after the

shooting, the court should have withdrawn the jury and given a hearing on the *voir dire,* to determine its admissibility. 127 La. 1077; 56 L. R. A. 432, *et seq.*

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The case of *Plumley* v. *State,* 116 Ark. 17, 171 S. W. 927, settles the admissibility of this testimony.

WOOD, J., (after stating the facts). (1) The court did not err in excluding the proffered testimony of witness Harris in regard to the impeachment of witness Buster Williams. Buster Williams had stated, in the presence of Roleson and Harris before the trial, that he saw appellant at the house of Ellen Vincent four or five feet from the window. At the trial Buster Williams testified that when he saw appellant his face was right at the window. The court permitted the appellant to impeach the witness by showing that he had made the statement to Roleson before the trial, which contradicted his testimony on the trial. But the appellant sought by the testimony of Harris to go further and show the reasons or probable reasons why the witness made these contradictory statements. Such testimony was collateral to the issue, the only issue being as to whether the witness was impeached by his contradictory statements.

(2) The exclamation of Hattie Stevens, "Oh, Lem," made just before the gun fired, and the execlamation just after the gun fired, "Lord have mercy, Lem's done shot me," were spontaneous emanations from the transaction itself. They were so closely connected with it as to be a part of it. They were so contemporaneous with the main fact of the shooting or so nearly related to it as to illustrate its character, and the state of the mind of the person injured before she had time to think and concoct an accusation against the one causing it. They were verbal facts of the transaction, so to speak, and therefore should have been admitted as a part of it. *Plumley* v. *State,* 116 Ark. 17, 171 S. W. 925, and cases cited.

The exclamations here were very similar, and made under similar circumstances, to those made by the party

injured in the case of *Plumley* v. *State, supra,* the only difference being that in the *Plumley* case it was daylight, and it was shown that the injured party knew that Plumley shot him. But this difference does not change the character of the declarations here or make them any less a part of the *res gestae.*

The contention that the uncontroverted evidence shows that these exclamations were only the expression of an opinion on the part of Hattie Stevens, and that they should have been excluded for that reason is not sound.

(3) The circumstances were sufficient to warrant the court in submitting to the jury the issue as to whether or not the exclamations were the mere expression of opinion or the statement of a fact, and the court correctly instructed the jury on this issue in instructions given at the instance of the appellant numbered 1 and 4. These instructions covered all that was necessary to say upon that subject, and all that the appellant requested in prayer No. 3. There was no error, therefore, in refusing to grant that prayer. The ruling of the court in refusing to grant prayer No. 3 was correct for the further reason that such prayer was argumentative in form, and because it submitted to the jury to say whether or not the exclamation was used. In this particular the prayer was abstract, because the uncontroverted testimony showed that Hattie Stevens did make the exclamation.

No question was raised at the trial as to the admissibility of the testimony of Gib Cooper, complained of here. No error, therefore, can be predicated upon the admission of that testimony. *Harding* v. *State,* 94 Ark. 65-68.

The testimony was amply sufficient to sustain the verdict.

The judgment is correct, and it is therefore affirmed.