HOLLAND *v.* STATE.

Opinion delivered December 4, 1916.

1. HOMICIDE—SECOND DEGREE MURDER—SUFFICIENT PROOF.—A verdict pronouncing defendant guilty ·of second degree murder, *held* to be warranted by the evidence.

2. EVIDENCE—DYING DECLARATIONS—DECLARATIONS OF THIRD PARTY.— A. was indicted and tried for the murder of his brother B. A.'s son, D., was present at.the time of the shooting, and was himself shot. *Held,* statements of D. were not admissible as dying declarations, at the trial of A.

3. EVIDENCE—DECLARATIONS OF THIRD PARTY—RES GESTAE.— Under the facts in the above syllabus, D. had been asked who had begun the shooting, and he replied that B. had. *Held,* such a statement was not admissible as a part of the *res gestae.*

4. HOMICIDE—SELF-DEFENSE.—In a prosecution for murder, the instruction of the court, on the issue of self-defense, held proper.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; affirmed.

*C. W. McKay,* for appellant.

1. It was error to exclude the testimony of C. C. Hammock. 93 Ark. 414; 21 Cyc. 826-7. It was part of the *res gestae.* 98 Ark. 435; 69 *Id.* 537; 43 *Id.* 99; 66 *Id.* 494; 116 Ark. 17.

2. Instruction No. 2 for defendant should have been given. The court erred in amending No. 9.

3. The evidence is not sufficient to sustain the verdict.

*Wallace Davis,* Attorney General, and *Hamilton Moses,* Assistant, for appellee.

1. There was no error in excluding the alleged dying declaration of Dud Holland. ,104 Ark. 162; 68 *Id.* 355; 81 *Id.* 417; 88 *Id.* 579; 99 *Id.* 208; 120 Ga. 857; Underhill, Cr. Ev., § 1440; 104 Ark. 175.

2. There is no error in the refusal of instruction No. 2. This was fully covered in the court's charge. 52 Ark. 180; 58 *Id.* 472; 72 *Id.* 384; 74 *Id.* 33; 80 *Id.* 201.

3. The court did not err in amending defendant's instruction No. 9. 29 Ark. 248; 55 *Id.* 593; 37 *Id.* 257; 77 *Id.* 97; 164 U. S. 492; 80 Ark. 88, 92. The

instructions for the State follow the rule approved in 29 Ark. 248; 32 *Id.* 585; 37 *Id.* 257; 109 *Id.* 515; 116 *Id.* 24; 110 *Id.* 415.

4. The evidence fully sustains the verdict. 109 Ark. 449; 104 *Id.* 142; 101 *Id.* 570; 109 *Id.* 130, 138; 92 *Id.* 120; 50 *Id.* 511.

HART, J. The defendant J. J. Holland was indicted for the crime of murder in the first degree charged to have been committed by killing his brother, Bruce Holland. He was tried before a jury and convicted of murder in the second degree, his punishment being fixed at ten years in the State penitentiary. From the judgment of conviction he has duly prosecuted an appeal to this court. The material facts proved by the State are as follows:

J. J. Holland, called Rome Holland, and Bruce Holland were brothers and lived near to each other in Columbia county, Arkansas. Rome Holland has a grown son called Dud Holland. An enmity existed between them and Bruce Holland. On one occasion Rome Holland came over in the field where his brother Bruce, was at work and threatened to kill him. On other occasions he would sit on top of the fence at the home of his brother Bruce with his rifle in his hand and at one time fired off his rifle while Bruce was out in the yard.

On the day of the killing, Bruce Holland went to a commissary near his house to purchase some supplies. His nephew, Dud Holland, was there and they with others remained there for some time. Finally Rome Holland came up with a raincoat in his hand. He gave it to his son Dud and asked him to take it home with him. About that time Bruce Holland started toward home, and after he had gone ten or fifteen steps, Rome Holland started after him. After Bruce Holland had walked about 113 steps, he set down on a stump and motioned to his brother Rome to go on. Rome Holland passed on about 25 steps and then came back and put his hand on his breast and was talking to his brother

Bruce. The witnesses at the commissary could not hear what the brothers were saying to each other. Dud Holland said to the other parties at the commissary, "Come on, some of you, and let's go up there and keep them from killing each other." One of the parties started to go with him but his brother stopped him. Dud Holland, however, proceeded on to where his father and uncle were talking. As soon as he got there, the shooting commenced. The witnesses for the State say they could not tell which one shot first, but one of them, a nephew of Rome and Bruce Holland, said that he thought that his uncle Bruce fell first.

Bose McMahon testified that he happened to look at the brothers just before the shooting began, that he could not tell who fired the first shot; that they were almost at the same time; that when the smoke cleared away, one of them was on the ground; that when he got there Bruce Holland was down and Rome and Dud Holland were up and that one or both of them were still shooting at him and that Bruce was lying right where he saw some one fall. That after Bruce fell, Rome and Dud Holland went towards him and that he saw the smoke from their pistols; that he examined Bruce Holland's pistol just after the shooting and that it was an old style Smith & Wesson single action pistol; that one cartridge had been fired from it and the other four were still in the pistol; that the shooting took place about 5 o'clock on a cloudy afternoon in November. The evidence shows that the killing occurred in Columbia county, Arkansas, in 1915; that Dud Holland was armed with a 38 caliber pistol; that Rome Holland was armed with a 32 caliber pistol; that Bruce Holland had a large bullet in his head over his right eye and a small bullet also entered his head; that he was also shot in the body twice; that there were two sizes of bullet wounds caused by pistols of different caliber and that he died in a very short time as the result of these pistol wounds. At the time he was killed, Bruce Holland had sold his place and was preparing to move out of the neighborhood.

Another witness testified that some time after the killing the defendant told him that he heard that he was living where Nettie Holland (his brother's widow) was staying; that witness answered in the affirmative and the defendant then said, "If you help her out in any way, I will put your light out just like I did Bruce's." The defendant further said, "I wish God would raise Bruce from the dead, so that I could kill him again, and he could kill me, and we could both kill each other."

According to the testimony adduced by the defendant, Bruce Holland had threatened him and his son, had purchased a rifle to kill them with, and was in the habit of carrying his rifle around with him. On the day of the killing the defendant said that he walked off from the commissary behind his brother; that they walked about a hundred steps close together, and that all at once Bruce sat down on a stump by the side of the road and told him to go on; that he did not make any reply to Bruce, but walked on a few steps, and that Bruce then said that Dud (referring to defendant's son) had been lying to him and that he was going to kill him; that he turned around and thought that he would try to reason with Bruce and show him that he had no right to kill anybody; that he walked back a few steps and told Bruce that Dud did not mean him any harm, and that for him not to kill him, and that after talking a little bit, he saw that Bruce was determined to kill Dud, and that he pulled his coat to one side, struck himself on the breast and told Bruce that if he was bound to kill one of them, to kill him and let the boy go home to his mother; that he told Bruce there was no use of having trouble; that about this time he heard a pistol hammer click, and looked around and saw Dud; that he saw that Dud was hit with a bullet, and that he went up to Dud and put his left arm around him and held him up while he emptied his pistol; that he then jerked out his own pistol and emptied it; that he heard Bruce tell the boy he was going to kill him, and at the same time jerk out his pistol and shoot; that Dud then fell back against him and pulled

his own pistol and shot at Bruce; that he held the boy up while he fired several shots, and that he himself shot several times at Bruce.

(1) Other witnesses for the defendant testified that Bruce fired the first shot. If the jury believed the witnesses for the State, it was warranted in finding the defendant guilty of murder in the second degree. It is true the witnesses for the State testified that the first two shots were fired nearly together, and that they could not tell which one fired first, but one of the witnesses testified that as soon as the first shot was fired, he saw a man fall, and that when he got up there he found that the man who had fallen was Bruce Holland. Bruce died in a very short time after the difficulty was over, and as there was only one shot fired from his pistol, the jury might have inferred that his nephew shot first. In any event Bruce Holland did not fire but one shot, and the evidence shows that the defendant and his son continued to shoot at him after he fell down on the ground. They both emptied their pistols at him, and several shots took effect in his head and body. When we consider this testimony together with the enmity which was shown to have existed between the parties and the previous threats made against the life of Bruce Holland, the jury was warranted in finding that it was a wilful and malicious killing, and that the defendant was guilty of at least murder in the second degree.

C. C. Hammock, the owner of the commissary and mill near which the shooting occurred, testified that he was at the mill the day of the killing, but did not see any of the shooting. He stated that he went to the scene of the shooting immediately after it occurred, and saw Bruce Holland lying up against a log dying, and Dud Holland was over by the side of the road a short distance away, and that Dud said he was dying. That they were both shot. He was then asked the following: "Did Dud Holland say anything further?" He answered, "I asked Dud who began the shooting, and he said his uncle Bruce shot him first."

On cross-examination he was asked: "Did Dud Holland tell you he was dying?" He answered, "Yes, I believe he did, and I told him he wasn't dying." The prosecuting attorney objected to the evidence of Dud Holland's dying declaration and asked that it be excluded from the jury. The court held that the admission of dying declarations in evidence is confined to cases of homicide, where the death of deceased is the subject of the charge, and excluded the testimony from the jury.

(2) The ruling of the court was excepted to and it is now insisted that the judgment should be reversed because the court excluded the testimony from the jury. It will be remembered that the defendant was on trial charged with killing his brother Bruce, and although Dud Holland was shot in the same fight, his dying declarations were not, as such, admissible in evidence on the trial of Rome Holland for the murder of Bruce Holland. *Taylor* v. *State*, 120 Ga. 857; *State* v. *Westfall*, 49 Ia. 328; *State* v. *Bohan*, 15 Kan. 407; *Johnson* v. *State* (Fla.), 40 L. R. A. (N. S.) 1195; *State* v. *Nist*, 66 Wash. 55, 118 Pac. 920, Ann. Cas. 1913 C, 409.

On this subject, Mr. Underhill says: "The declaration of a deceased person which is offered in evidence as a dying declaration is only admissible, as such, in case his death is the subject of an inquiry because of an accusation of homicide. * * * The mere circumstance that a person's death occurred in a disturbance, in which the person for whose homicide the prisoner is indicted, was killed, is insufficient to admit the declaration." Underhill on Criminal Evidence, section 106; 2 Wigmore on Evidence, section 1440; *Montgomery* v. *State*, 80 Ind. 338; *State* v. *Jefferson*, 77 Mo. 136; *State* v. *Dickinson*, 41 Wisc. 299. See, also, *Rhea* v. *State*, 104 Ark. 175.

(3) The contention is also made by the defendant that if the dying declaration of Dud Holland can not be admitted in evidence as such a declaration, yet it was proper as a part of the *res gestae*. They cite in support of their contention *Childs* v. *State*, 98 Ark. 435,

and *Stevens* v. *State*, 117 Ark. 64, and *Carr* v. *State*, 43 Ark. 99. The witness stated that, when he went up to the place where the shooting occurred, that Dud Holland said he was dying, that the witness asked Dud who began the shooting, and that Dud said his uncle Bruce shot him first. This was the narration of a past event in response to a question asked him, and was not a part of the transaction itself. Under the authorities above referred to, *res gestae* are the surrounding facts of a transaction, explanatory of an act, or showing a motive for acting. As we have already seen, the answer was made by Dud Holland in response to a question asked him, and it was made after he had said that he was dying, thus showing that his mind had been turned to other things, and the answer that his uncle Bruce shot him first was made in response to a question, and was not a spontaneous emanation from the transaction itself.

(4) It is also contended by counsel for the defendant that the judgment should be reversed because the court erred in giving in its amended form instruction No. 9, which reads as follows:

"You are instructed that to justify a killing in self-defense, it is not essential that it should appear to the jury to have been necessary, it is sufficient if the defendant (acting as a reasonable person) honestly believed without fault or carelessness on his part that the danger was so urgent and pressing that the killing was necessary to save his own life or prevent his receiving great bodily injury, or to save the life of his son; and the reasonableness of defendant's apprehension is to be judged from the standpoint of the defendant, situated as he was at the time, and not from that of the jury." The amendment consisted in adding the words included in parenthesis, towit: "acting as a reasonable person." In *Hoard* v. *State*, 80 Ark. 87, the court held that "it was not error to instruct the jury that any one who killed another was justified in defending himself, if it appeared to him, acting as a reasonable person, without fault on his part, that he was in danger of losing

his life or receiving great bodily harm, as the law presumes, where nothing to the contrary is shown, that the accused is of ordinary reason and holds him accountable accordingly." The court in that case, while not approving the form of the instruction gives at length its reasons for holding that such an instruction does not constitute reversible error and the reasoning of the court need not be repeated here. See, also, *Scoggin* v. *State*, 109 Ark. 510. There is nothing in the record in the present case that tends to show that the defendant is weak-minded or is a person of less than ordinary intelligence. Therefore, the judgment will not be reversed for this alleged error.

The defendant asked an instruction on reasonable doubt which the court refused to give. We need not set out this instruction, however; for the court in its instructions given to the jury fully covered the question of reasonable doubt, and it is well settled that the court is not required to repeat instructions on the same point. We have carefully examined the record and there is nothing in it which constitutes reversible error.

The judgment will be affirmed.