## HUDDLESTON *v.* STEUART.

## Opinion delivered April 24, 1922.

1. LIBEL AND SLANDER—EVIDENCE IN MITIGATION OF DAMAGES.—In an action for slander, testimony that the statement in question was based on a current report concerning plaintiff was inadmissible in mitigation of damages where the court's instructions limited the jury's consideration to damages caused by defendant's statement.

2. TRIAL—NECESSITY OF REQUEST FOR INSTRUCTIONS.—Where an instruction as to a counterclaim for assault failed to state the duty of the assailant to withdraw in good faith before he could claim the right of self-defense, and, on objection by counsel, the court offered to submit an instruction on that subject if counsel would prepare it, on his failure to prepare it the giving of the original instruction was not error.

3. ASSAULT AND BATTERY—INSTRUCTION AS TO SELF-DEFENSE.—An instruction as to assault that if the assailant acted in necessary self-defense from real and honest conviction of the danger, the verdict should be for him, was erroneous in omitting the requirement that the assailant must have acted without fault or carelessness.

Appeal from Pike Circuit Court; *James S. Steel,* Judge; reversed.

STATEMENT OF FACTS.

This was an action of slander brought by R. M. Steuart against John W. Huddleston. Huddleston denied the allegations of the complaint, and by way of cross-complaint sued Steuart for damages for unlawfully assaulting him.

According to the evidence adduced in behalf of the plaintiff, Steuart, he was a candidate for sheriff before the Democratic primaries in Pike County, Arkansas, and the defendant, Huddleston, in order to secure votes against him, told some of the voters that he, Steuart, had killed his father and had cursed his mother on her death-bed. Steuart did not kill his father and did not curse his mother on her death-bed. He had done nothing to his parents to give rise to such a report, and he suffered great humiliation and anguish of mind when he was informed of the language used about him by Huddleston.

On the part of the defendant Huddleston, evidence was adduced tending to show that Steuart about twenty years before had had a row with his father; that he had struck his father with his fist; that his father became sick in a few days and died in about a week thereafter from pneumonia. There was also introduced the evidence of a physician to the effect that pneumonia is sometimes caused by a blow.

Huddleston was a witness for himself on his cross-complaint. According to his testimony, Steuart followed him into Ballard's store in the town of Murfreesboro and tapped him on the back with his open hand and asked him why he not spoken to him before he came into the store. Huddleston had passed Steuart just before he entered the store. Previous to that time Steuart had threatened to sue Huddleston for slander on account of the remarks Huddleston had made about Steuart killing his own father. They had some words about this in Ballard's store, and Huddleston told Steuart not to get it into his head that he was afraid of him. Huddleston told Steuart, however, that he did not want any trouble with him, and then went back into the store and put both hands upon the counter. As he was standing there looking down towards the floor, Steuart hit him above the right eye with his right fist and knocked him senseless. Huddleston went down on his hands and knees and tried to get up. Steuart hit him again behind the right ear. Steuart knocked Huddleston to his knees the second time and then kicked him in the left side. Huddleston was going on a journey to a distant part of the county when he encountered Steuart, and had a pistol. He did not at any time attempt to use the pistol on Steuart or to hurt him in any other way. Huddleston was badly hurt by the blow he received from Steuart. Huddleston was about 59 years old and weighed about 156 pounds. Steuart was 35 years old, and was a very stout able-bodied young man.

Steuart was a witness for himself. According to his testimony, he went into Ballard's store to talk to Hud-

dleston about the slander case he anticipated bringing against him. During the course of their conversation Steuart saw the pistol which Huddleston was carrying, and Huddleston became angry and attempted to draw his pistol and shoot Steuart. Steuart then struck him with his fist and knocked him down on a bench. He did not strike Huddleston except to keep him from shooting him. Steuart did not make any attempt to jump on Huddleston or to kick him. About twenty years before that time Steuart's father had gotten drunk and tried to fight him. Steuart pushed his father away, and did not strike him at all.

Each party introduced evidence in corroboration of his own testimony. The above statement, however, contains the material evidence introduced by each party and is sufficient to present the issues raised by the appeal.

Among other instructions the court told the jury to first consider whether Steuart was entitled under the law and the evidence to recover of Huddleston, and, if so, to find the amount. The jury was then told to consider whether Huddleston was entitled to recover of Steuart, and, if so, to find the amount.

The jury was also told that, if it should find that both should recover, it should set-off the amount found in favor of each party and render a verdict for the difference in favor of the party for which it should find the larger amount.

The jury found a verdict for the plaintiff, Steuart, and from the judgment rendered the defendant Huddleston has duly prosecuted an appeal to this court.

*Tompkins, McRae & Tompkins* and *O. A. Featherston,* for appellant.

The defendant could properly be held responsible only for such damages as were caused by his own statements, and not for the statements made by others; he was therefore entitled to prove, in mitigation of damages, that he had heard these statements from various

different sources and that they had been current in the county for many years. 118 Ark. 81.

The undisputed evidence shows that Steuart was the aggressor in the assault. The question of self-defense was not properly in the case, and instruction 7 was objected to generally on that ground, and specifically because it ignored the duty on his part to make an honest effort to withdraw if he was the aggressor. We do not think the law imposes the duty both to point out the defect in an instruction and to ask a correct instruction covering the point. 141 Ark. 346. Having objected on the ground that self-defense was not an issue in the case, the effect of compliance with the court's suggestion to prepare an instruction would have been to waive the error in giving an instruction that subject. 93 Ark. 589; 94 *Id.* 524; 88 *Id.* 138. See also 135 Ark. 520, 527; 99 *Id.* 576; 62 *Id.* 286; 69 *Id.* 648.

Instruction 8 given by the court was erroneous in that it did not state that Steuart must have acted without fault or carelessness on his part. 75 Ark. 350; 59 *Id.* 132; 67 *Id.* 594; 69 *Id.* 649; 139 *Id.* 433; 116 *Id.* 17.

*W. T. Kidd,* for appellee.

The appellant did not offer to prove appellee's general reputation, but only that witness, Huddleston, had heard the rumor and repeated it. It was not competent, and was properly excluded. 95 Ark. 207; 55 *Id.* 501; 56 *Id.* 103; 52 S. W. (Ky.) 934.

If instruction 7 was open to the objection made by the appellant he should have asked a correct instruction covering the point. 47 Ark. 196; 80 *Id.* 354; 86 *Id.* 360; 95 *Id.* 409; 129 *Id.* 324; 67 *Id.* 416; 128 *Id.* 572; 114 *Id.* 399; 74 *Id.* 444; 75 *Id.* 142; *Id.* 373; 77 *Id.* 455.

Instruction 8 was not erroneous. The term, "reasonable man" and "without fault or carelessness," might either have been correctly used in the instruction. 29 Ark. 248; 55 *Id.* 593; 37 *Id.* 257; 77 *Id.* 97; 102 *Mass.* 155; 97 Ala. 55; 101 Cal. 229; 80 Ark. 92; 81 Iowa 138; 164 U. S. 492, 498; 69 Ark. 654.

HART, J., (after stating the facts). It is first insisted by counsel for the defendant that the judgment should be reversed because the court erred in refusing to allow the defendant to testify to certain facts before the jury. The defendant Huddleston, while on the witness stand, was asked from whom he got the information in regard to Steuart. The court sustained an objection to the question, and the defendant excepted to the ruling of the court and offered to state as a witness that he had heard the rumor about Steuart having killed his father just as he had stated it to the witnesses for five years, and that he had simply repeated what had been current rumor in the community for several years.

Counsel for the defendant insists that he was liable only for the damage caused by his own remarks, and that the offered testimony was admissible in mitigation of damages. Counsel invoke the rule laid down in *Simonson* v. *Lovewell,* 118 Ark. 81, to the effect that in awarding compensatory damages the jury might consider the fact that plaintiff bore the reputation of being a defaulter, or that his reputation for morality was bad in mitigation of damages. This principle had no application in the case at bar. Steuart's reputation for morality or immorality could not be established by showing that the remarks made by Huddleston were current rumor in the community. Of course Huddleston was only liable for the damages caused by his making the remarks, and was not liable for damages caused by other persons making the same remarks; but the instructions given by the court to the jury fixed the damages to the amount shown by the evidence in the case and thus confined the damages to the remarks made by Huddleston, for none other were proved to the jury. It follows that this assignment of error was not well taken.

It is next insisted that the court erred in giving one of plaintiff's instructions on the question of self-defense. It is insisted that Steuart followed Huddleston into Ballard's store and that the instruction ignored the duty devolving upon Steuart to attempt in good faith to with-

draw or abandon the difficulty before he could invoke the doctrine of self-defense. It is well settled that the court can not cover all the phases of a case in one instruction, and the record shows that when counsel made the objection now complained of to this instruction, the trial court told them that if they would prepare an instruction on self-defense fully defining it he would give it. This counsel declined to do, and we do not think the court under the circumstances erred in giving the instruction complained of.

It is next insisted that the court erred in instructing the jury on the measure of damages. We do not deem it necessary to set the instruction out. It is sufficient to say that it is in accordance with our previous decisions on the question. *Townsley* v. *Yentsch,* 98 Ark. 313; *Taylor* v. *Gumpert,* 96 Ark. 354; and *Murray* v. *Galbraith,* 95 Ark. 199.

It is next insisted that the court erred in giving instruction No. 8, which is as follows: ''The court instructs the jury that the plaintiff was entitled to act upon appearances, and, if the language and conduct of Huddleston was such as to induce in the mind of a reasonable man, under all the circumstances then existing and viewed from the standpoint of Steuart, a fear that death or great bodily harm was about to be inflicted by Huddleston upon him, it does not matter if such danger was real or only apparent, and, if Steuart acted in necessary self-defense from real and honest conviction as to the character of the danger, if any, your verdict should be for Steuart on the cross-complaint; even though he was mistaken as to the extent of danger.''

A specific objection was made to this instruction on the ground that the plaintiff must have acted without fault or carelessness on his part before he could invoke the doctrine of self-defense. In this contention we think counsel are correct. It is true that the defendant's standpoint is the proper one from which to view the imminency of the danger, but such belief on the part of the defendant must be an honest belief, and not due to his own negli-

gence. Mere honesty, however, is not in itself sufficient. The defendant must be free from fault or carelessness. If his belief is due to his own negligence, his honesty is not sufficient to justify the assault as having been done in self-defense. *Smith* v. *State,* 59 Ark. 132; *Magness* v. *State,* 67 Ark. 594; *Hoard* v. *State,* 80 Ark. 87; *Pickett* v. *State,* 91 Ark. 570, and *Dean* v. *State,* 139 Ark. 434. It may be said in this connection that the negligence which will prevent a homicide from being justifiable is negligence on the part of the slayer in making his self-defense, and not some prior negligence. *Elder* v. *State,* 69 Ark. 648.

It will be noted that, although specifically requested to do so, the court refused to incorporate into the instruction that the defendant must have acted without fault or carelessness on his part before he could justify the assault as having been done in self-defense. This ruling of the court necessarily resulted to the prejudice of the defendant. Under the instruction as given the jury might have found for Steuart on the theory that he honestly believed that he was about to receive great bodily harm at the hands of Huddleston, regardless of the fact of whether he was negligent or not in forming that belief. This is not the law. As we have just seen, he must have acted without fault or carelessness on his own part.

For the error in giving instruction No. 8, as indicated in the opinion, the judgment will be reversed, and the cause remanded for a new trial.