SPIVEY *v.* STATE.

Opinion delivered October 15, 1917.

1. CRIMINAL LAW—PROOF OF VENUE.—Venue may be proved, like any other fact, by circumstantial evidence, as well as by direct testimony.

2. CRIMINAL LAW—POSSESSION OF RECENTLY STOLEN PROPERTY—LARCENY.—Possession of recently stolen property, unexplained, will warrant a conviction for larceny; but it is improper to tell the jury that such evidence is sufficient to sustain a conviction.

3. TRIAL—WEIGHT OF EVIDENCE—PROVINCE OF JURY.—It is within the exclusive province of the jury to determine under proper instructions of the court, when the evidence is sufficient to convict; the court is without right to point out what inferences may be drawn from particular facts in proof.

4. TRIAL—REMARKS OF PROSECUTING ATTORNEY—OPINION.—While it would be improper for the court to tell the jury that the unexplained possession of stolen property would warrant a conviction, it is not improper for the prosecuting attorney to so state in argument.

Appeal from Little River Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

*Steel & Lake* and *James D. Head,* for appellant.

1. The venue was not proven. The yearling ranged in both Sevier and Little River counties.

2. To raise a presumption of guilt the possession must be recent and not a long time after the larceny. 17 R. C. L., § 78; 37 Tex. 202; 51 Am. Rep. 298; 4 Wigmore on Ev., § 2513; 92 Ark. 586; 91 *Id.* 495; 100 *Id.* 204.

3. The assistant prosecuting attorney's argument was improper and a misstatement of the law. 12 Cyc. 584; 22 Ark. 253; 12 S. W. 879; 61 Ark. 137; 72 *Id.* 461; 74 *Id.* 256; 76 *Id.* 430; 82 *Id.* 432; 83 *Id.* 193; 86 *Id.* 341.

4. The State's instruction No. 3 was erroneous. It ignores one of the principal issues—the venue—and there was no testimony to warrant it. It is no answer to say that other instructions properly submitted the issue. 77 Ark. 201; 93 *Id.* 564; 94 *Id.* 282. Conflicting instructions, where the evidence is also conflicting, can only mislead and confuse the jury. 77 Ark. 128.

5. Instruction No. 8 for defendant should have been given. It was error to modify it. 99 Ark. 121. Allegations of ownership are always material and must be proven beyond a reasonable doubt. 72 *Id.* 32; 97 *Id.* 32; 92 *Id.* 216.

Defendant's instruction No. 6 should have been given. 92 Ark. 216.

6. There is no proof of the *corpus delicti.* 71 So. 977; 147 N. W. 69; 24 N. C. 402; 44 Ark. 39; 37 S. W. 800; 53 N. C. 410; 82 *Id.* 675; 37 Tex. 202; 17 Tex. App. 219; 25 So. 143, 61 Pac. 1033; 77 S. E. 238.

The conviction was wholly unwarranted.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The venue was proven. It is sufficient to prove it by a preponderance of the evidence. 42 Ark. 73; 62 *Id.* 497; 91 *Id.* 492. Direct proof is not necessary; the venue may be proven by circumstantial evidence. 99 Ark. 134; 112 *Id.* 236; 57 Ark. Law Rep. 101; 68 Ark. 336.

2. The prosecuting attorney's statement was a mere matter of opinion and not prejudicial. 95 Ark. 172; 91 *Id.* 576; 95 *Id.* 321; 76 *Id.* 39; 77 *Id.* 74.

3. There was no error in giving instruction No. 3. The necessity of proving the venue had already been stated to the jury in No. 2. A series of instructions which supplement each other, and taken as a whole, state the law correctly, is not objectionable, though some of them standing alone are objectionable for stating the law incompletely. . 82 Ark. 64; 85 *Id.* 179; 74 *Id.* 431; 77 *Id.* 97.

4. There was no error in refusing No. 8 nor in modifying it. It is not necessary to duplicate instructions. 101 Ark. 569; 92 *Id.* 481. The jury had already been fully instructed on "reasonable doubt."

5. No. 6 was properly refused. 77 Ark. 531. But the court had already given No. 4, asked by appellant. It covered No. 6.

6. While there is no positive proof that appellant stole the yearling, yet the proof is sufficient to sustain the conviction. He fled to Oklahoma, and dodged the officers. These were circumstances of guilt. Wharton, Cr. Ev., § 750.

HART, J. Ben Spivey, Sr., prosecutes this appeal to reverse the judgment of conviction against him for the crime of grand larceny charged to have been committed by stealing a dark red heifer belonging to William Hawkins. William Hawkins lived northeast of Wilton, in Little River County, Arkansas, and, among other cattle, owned a dark red muley heifer, which became two years of age in April, 1916. Ben Spivey, Sr., lived about seven miles from him in Sevier County, Arkansas. Little River was between them and formed the boundary line between Little River and Sevier counties. Some time in March, 1916, Henry Orton bought some cattle from Ben Spivey, Sr., and turned them in his lot in Ashdown, in Little River County, Arkansas. Among them was a dark red muley heifer which was freshly marked and branded. Her ear was still bleeding and she looked like she had been

branded about a week. In two or three days William Hawkins went to the lot and examined the cattle. He identified the heifer as belonging to himself. He testified that he had raised the heifer, that she had run in the range near his home with another cow called the Calhoun white cow; that this cow was later purchased by the defendant who owned her in the fall of 1915, and the spring of 1916; that these cattle would sometimes cross over the steel bridge into Sevier County, and range around a salt well close to where the defendant lived; that his red heifer disappeared in the fall of 1915; that he did not see her any more until he identified her at Ashdown, in April, 1916; that the heifer was marked in his own mark, which was a smooth crop off of the left ear and an over-slip in the right ear; that both ears were cut off smooth when he found her at Ashdown but the slope on the top of the ear was still there; that the heifer was branded with a "B," which was Spivey's brand. The heifer was also identified by another witness as belonging to William Hawkins.

Henry Orton testified about Hawkins coming to his lot and identifying the red heifer as his own. He testified that he had bought the yearling from Ben Spivey in March, 1916; that the heifer had been purchased by Roy Goolsby for him. Goolsby testified that he had bought the heifer for Orton.

(1) It is earnestly insisted by counsel for the defendant that there is no proof of venue. There is no direct proof of venue, but venue may be proved, like any other fact, by circumstantial evidence, as well as by direct testimony. *Bloom* v. *State*, 68 Ark. 336, and *Cranford* v. *State*, 130 Ark. 101, and cases cited.

In this case the proof shows that the red heifer was raised by William Hawkins at his home in Little River County and that it ran in the range with Hawkins' other cattle and with the Calhoun white cow near his home in Little River County; that these cattle went back and forth in Sevier County to a salt well by crossing a steel bridge over Little River, which was the dividing line between the two counties.

The defendant himself admitted that he owned the Calhoun white cow and that he sold this cow at the same time he did the red muley heifer; that at the time he got her up to sell her she was running on the range in Little River County, just above William Hawkins' place. We think the jury might have inferred from these facts and circumstances that the red heifer was taken up by the defendant in Little River County.

(2) It is next insisted that there is not sufficient evidence to warrant the jury in convicting the defendant of the larceny of the red heifer. In *Sons* v. *State,* 116 Ark. 357, the court said:

"We have held in repeated decisions that unexplained possession of property recently stolen constitutes evidence legally sufficient to warrant a conviction of larceny or of the crime of knowingly receiving stolen property; but that an instruction that such evidence is sufficient to sustain a conviction amounts to an instruction on the weight of the evidence and is, for that reason, an invasion of the province of the jury." To the same effect see *Mitchell* v. *State,* 125 Ark. 260, and cases cited.

Counsel for defendant recognize this rule, but say that it does not apply under the facts of this case. They point to the fact that Hawkins himself testified that he missed the red heifer in the fall of 1915, and that he did not see her any more until he saw her in the lot at Ashdown, in April, 1916; that Paulk, another witness for the State, testified that he saw the yearling in July, 1915, and next saw her in February or March, 1916, about two weeks before she was bought by Henry Orton.

It will be remembered, however, that the testimony showed that the heifer ran on the range with the Calhoun white cow just a short time before the defendant sold the cattle to Orton. In addition the red heifer was freshly branded with the brand of Spivey at the time he sold her to Orton and the marks on the heifer had been so recently changed that the ears were still bleeding and the marks had been changed so as to obliterate almost entirely Hawkins' mark. Spivey disappeared about the time he was

indicted and was gone for some time in the State of Oklahoma. Again, as soon as Hawkins made known to Spivey that he claimed the red heifer, Spivey agreed to and did pay him ten dollars for her. It is true Spivey explained that he did this in order to save the expense of a lawsuit and also explained that he had gone to the State of Oklahoma for the purpose of buying a farm and settling there. He also proved by himself and other witnesses that he bought the red heifer from a negro, and in addition proved other facts and circumstances which tended to show that he did not steal the red heifer. We do not deem it necessary to set these out; for the jury were the judges of the crdibility of the witnesses and the facts and circumstances above recited were sufficient to warrant the jury in returning a verdict of guilty.

(3) During the argument the assistant prosecuting attorney told the jury that the stolen yearling had been found in the possession of the defendant and that "this possession was in law sufficient to warrant the jury in convicting the defendant." Counsel insisted that the refusal of the court to interfere when this argument was objected to was tantamount to an instruction to the effect that the possession of property recently stolen was in law sufficient to warrant a conviction. We do not agree with counsel in this contention. The court would have had no right to have said this to the jury, for that would have been an expression by the court as to the effect which the jury should give to the evidence. It is within the exclusive province of the jury to determine under proper instructions of the court when the evidence is sufficient to convict. The court has no right to point out what inferences may or should be drawn from particular facts in proof. *Blankenship* v. *State,* 55 Ark. 244, and *Mitchell* v. *State,* 125 Ark. 260.

(4) It was quite a different thing, however, for the prosecuting attorney to have used the language in question. It amounted to no more than the expression of an opinion by him that the possession of the defendant under the facts and circumstances adduced in evidence was suffi-

cient to warrant the jury in finding that he had stolen the heifer.   He could legitimately make this argument to the jury and there was no reversible error in so doing.

Counsel for defendant next assigns as error the giving of instruction No. 3.   The instruction is as follows:

"It is not necessary, to constitute larceny, that the property should be taken from the immediate possession of the owner, but if you believe from the evidence, beyond a reasonable doubt, that the heifer was on the range, and was taken by the defendant with the felonious intent to steal the same, you will convict him."

It is contended by counsel that this instruction is deficient because it did not require proof of venue to warrant a conviction.   The necessity of proving venue was clearly and fully stated in instruction No. 2, which immediately preceded the instruction complained of.

Again in other instructions for the State and for the defendant the necessity of proving the venue was clearly and fully stated to the jury.   When the instructions are read together we think the jury could not have been misled on this point.

Again it is insisted that the court erred in refusing to give instruction No. 6 at the request of the defendant, which is as follows:

"If you believe from the evidence in this case, or if you have a reasonable doubt from the evidence, that the defendant or his son bought the yearling in question in good faith, believing at the time that it belonged to the party of whom they bought it, and that he had the right to sell same, you will acquit the defendant."

We do not think the verbiage of this instruction is correct.   It might have tended to confuse and mislead the jury.   It was perhaps intended to state that the jury should acquit the defendant if they entertained a doubt with respect to the defendant's guilt in the manner of his acquiring possession of the yearling.   The jury might have inferred from it, however, that if they doubted the defendant's testimony as to his alleged purchase of the yearling that it was their duty to acquit him.

Moreover, if it be assumed that the instruction meant what we have above stated it was intended to mean that it was fully covered by other instructions on the same point. The court fully and fairly submitted to the jury the respective theories of the State and of the defendant. The court also gave clear instructions on the subject of reasonable doubt.

After a careful consideration of the whole record, we are of the opinion that there is no prejudicial error in it and the judgment will be affirmed.