## GIBSON *v.* STATE.

## Opinion delivered September 23, 1918.

1. HOMICIDE—SUFFICIENCY OF INDICTMENT.—An indictment for murder is sufficient which alleges that defendant killed decedent *by shooting* him with a dangerous weapon, towit, a pistol, then and there held in the hands of him, the said Tom Gibson, with the felonious intent, etc., although the indictment fails to allege that the pistol was loaded or what it was loaded with.

2. JURY—DISQUALIFICATION.—Veniremen in a murder case who had read a newspaper account of the killing written by one who testified at the trial were not incompetent as jurors, although they had formed opinions about the case, where they stated that they could and would disregard such opinions if accepted as jurors, and where it appears that they did not regard the newspaper article as a narrative of one who had personal knowledge of the facts there recited, and they had no special intimacy or friendship with the writer of the article.

3. CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—The exclusion of evidence, in a homicide case, that defendant and decedent on the morning of the killing had gone together to get some whiskey and that their conversation disclosed no friction or ill will between the men was not prejudicial when other testimony admitted showed that later in the day the men were still drinking together in friendly fashion and that no quarrel arose between them until after they had commenced a game of poker, which was broken up by the killing.

4. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—Where there is evidence that would support a finding of self-defense, the court should give a proper requested instruction upon that feature of the case, notwithstanding the defendant's testimony that he did not do the killing.

5. HOMICIDE—SELF-DEFENSE—INSTRUCTION.—Where, in a prosecution for homicide, defendant denied that he killed the decedent, and the only testimony which tended to prove that the killing was in self-defense tended to establish that the defendant was the aggressor at the outset, an instruction on self-defense which ignored defendant's duty, if he was the aggressor, to make an honest attempt in good faith to withdraw from the combat was properly refused.

Appeal from Greene Circuit Court, Second Division; *W. J. Driver,* Judge; affirmed.

*W. W. Bandy* and *Huddleston, Fuhr & Futrell,* for appellant.

1. The indictment is defective as it does not allege that the pistol was loaded with gunpowder and balls. 2 Bishop New Cr. Proc. § 514 (2); Bishop Div. and Forms (2 Ed.) 520 and notes.

2. Incompetent jurors were accepted. 79 Ark. 127.

3. The court erred in excluding testimony of B. R. Hopkins. 3 Wigmore on Ev. § 1730.

4. The court erred in refusing instruction No. 1 on the theory of self-defense. 86 Ark. 30; 73 *Id.* 126; 19 A. & E. Cases 118; 70 Kan. 241; 10 Enc. Pl. & Pr. 173; 40 N. E. 525; 46 S. W. 491; 107 *Id.* 739; 1 Bishop Cr. Proc. (3 Ed.) § 980, etc.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The indictment is sufficient. Kirby's Digest, § § 2229, 2242-3.

2. There was no error in accepting jurors. The challenged jurors were competent. 114 Ark. 472; 109 *Id.* 450; 103 *Id.* 21; 66 *Id.* 53.

3. There was no error in excluding testimony of B. R. Hopkins.

4. Defendant's requested instruction on self-defense was properly refused. Appellant denied the killing outright. He provoked the difficulty and made no attempt to withdraw or avoid the necessity of the killing. 16 Ark. 568; 69 *Id.* 558; 104 *Id.* 397; 95 *Id.* 428; 77 *Id.* 141; 93 *Id.* 409; 99 *Id.* 576; 77 *Id.* 97.

SMITH, J. On Christmas day, 1917, about seven o'clock P. M., John Wise, the constable of Clarke Township, in Greene County, was shot and instantly killed in the Main Hotel in the City of Paragould, Arkansas. No one was present at the killing except John Wise, Croft Morris and E. T. Gibson, who was the owner of the hotel. Gibson was indicted at the May, 1918, term of the Greene Circuit Court for murder in the first degree, and at his trial was convicted of murder in the second degree and his punishment fixed at twenty-one years in the peniten-

tiary, and he has prosecuted this appeal to reverse that judgment.

A demurrer was filed to the indictment on the ground that the "indictment does not allege with what the pistol was loaded, nor does it allege in fact that the pistol was loaded."

The allegation of the indictment was that Gibson had killed Wise by "shooting him, the said John Wise, with a dangerous weapon, to wit, a pistol, then and there had and held in the hands of him, the said Tom Gibson, with the felonious intent," etc.

The motion for a new trial assigned as error the action of the court in holding four members of the special venire competent to serve as jurors, thereby compelling appellant to exhaust his peremptory challenges. The ground of this objection is the same as to each of these jurors. They had each read the newspaper account of the killing written by one Griffin Smith, with whom the veniremen were acquainted, and who testified as a witness at the trial, and it is insisted that under the showing made, Smith's story as it appeared in the paper was not mere rumor, but had the weight and verity of a personal conversation with the witness. These veniremen admitted that they had formed opinions about the case, although they stated that they could and would disregard them if accepted as jurors and would return a verdict based alone upon the evidence heard at the trial.

Error was assigned in the refusal of the court to permit B. R. Hopkins to detail a conversation between Wise and Gibson on the morning of the killing, the purpose of the excluded testimony being to show the friendly feeling then existing between the men. The action of the court in refusing to give a requested instruction on the law of self-defense is also assigned as error.

We will discuss these assignments of error in the order stated.

The indictment was not drawn with the usual technical accuracy. But it is not defective. Our statute provides: "The words used in an indictment must be con-

strued according to their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning." Kirby's Digest, sec. 2242. And when the language of this indictment is so construed, no room for doubt is left that the pistol then and there had and held in the hands of him, the said Tom Gibson, was loaded as pistols are ordinarily loaded.

Shortly after the killing occurred, Smith, in company with certain officers, went to the jail, where Gibson and Croft Morris had been carried, and there undertook to interview both of those men in regard to the killing, for the purpose of writing an account of it to be published in his **newspaper.**

Wise, Gibson and Morris had spent a considerable portion of Christmas day together, during which time they had regaled themselves by drinking whiskey and playing poker. Morris accused Gibson of firing the fatal shot, and has since persisted in that statement. According to the story written by Smith and published in the paper, Gibson denied firing the shot and stated that Morris had done so, but later, during the same interview, Gibson contradicted that statement, and finally stated that he would not talk further about the case. Smith did not write the article on the night of his interview but on the following day, and it was then written in narrative form from memory.

It is earnestly insisted that the statements made by the veniremen on their examination touching their qualification as jurors from which the facts above recited were elicited brings this case within the rule announced by this court in the case of *Sullins* v. *State,* 79 Ark. 127, on the subject of competency of jurors. In that case the juror testified that he had not talked with any of the witnesses in the case, but had formed his opinion from reading a report of the homicide in a newspaper written by his brother-in-law, who was also a witness for the State. The juror stated that he had confidence in his brother-in-law and relied on his statement in the

paper and had formed his opinion from this statement. In holding this juror incompetent, Judge RIDDICK, speaking for the court, said:

"Ordinarily, opinions formed from newspaper reports do not disqualify, but when the author of the report is known to the juror as a witness in the case, and is a person in whom he has confidence, then an opinion formed from reading his statement disqualifies, just as an opinion formed from talking with such witness would disqualify. In other words, if an opinion formed from talking with one known to be a witness disqualifies, then an opinion formed from reading a written report of the facts of the homicide made by one known to be a witness and in whom the juror has confidence must also disqualify, because in each case the juror knows that the statement on which he bases his opinion is not a mere rumor but a statement of the facts by a witness."

In the instant case, however, no attempt was made to show any special intimacy or friendship between Smith and any of the veniremen, and while the veniremen had formed opinions based upon the newspaper story, they stated that they regarded the article which they had read just as they would any other newspaper article which might or might not be true, and their testimony, taken as a whole, warranted the finding which the trial judge evidently made that the jurors did not regard the newspaper article as a narrative of one who had personal knowledge of the facts there recited. Indeed, it is not now contended that such is the case, for Smith was not present at the killing and knew nothing about it except what he had been told. It is true he had heard Gibson himself discuss the killing and make statements in regard to the circumstances of its commission, and he subsequently detailed these statements at the trial before the jury, but this evidence was of value chiefly as tending to refute the defendant's explanation of the killing.

We recognize the fact that the record presents an exceedingly close question as to the competency of these jurors. But our statute wisely provides that it shall not

be ground of challenge that a juror has formed or expressed an opinion from rumor merely (Sec. 2366, Kirby's Digest). And it does not appear that the trial judge was not warranted in treating the newspaper article read by the veniremen as a mere rumor. Of course, it is possible for a juror to be so influenced by a newspaper report, which, at last, is nothing more than a rumor, as to be unable to disregard an impression thus created. Such person should, of course, be discharged, and the accused not be required to use a peremptory challenge to be rid of him. But that question is not presented here, as the jurors all stated unequivocally that they could render a verdict uninfluenced by the article which they had read.

The purport of the testimony of the witness Hopkins which was excluded was that Gibson and Wise, on the morning of the killing, had gone together to get some whiskey, and that their conversation, heard by Hopkins, disclosed no friction or ill will between the men. The exclusion of this testimony was not prejudicial, because the testimony on the part of the State shows that later in the day these men were still drinking together in friendly fashion and that no quarrel arose between them until after they had commenced the game of poker, which was only broken up by the killing. The exclusion of this testimony, even if erroneous, was not prejudicial.

The court refused to give, at appellant's request, the following instruction: "While the defendant does not admit the killing, but on the contrary denies it, still if you find from the evidence that beyond a reasonable doubt, that he did in fact kill the deceased, John Wise, and if you find from the evidence that defendant, Tom Gibson, killed John Wise, and at the time he shot and killed Wise he believed honestly and in good faith from the facts and circumstances as they appeared to defendant at the time that deceased, Wise, was in the act of making a deadly assault upon him, under such facts and circumstances as make it reasonable for defendant to believe that he was about to lose his life, or receive

great bodily injury at the hands of the said Wise, and fired the fatal shot to protect himself, he would be guilty of no crime, and it matters not that it may appear to you, or might then have appeared to some other person, that defendant was in fact in no danger at said time; but, if he honestly believed that he was, it will be sufficient, but the mere fact that defendant believed that his life was in danger is not in itself sufficient. In addition to that, it must appear that at the time it was done the facts and circumstances connected with the difficulty made it reasonable for defendant to have entertained the belief, acting in good faith and without fault on his part.''

It is conceded by the Attorney General that the instruction is correct as an abstract statement of the law, but it is insisted that no error was committed in refusing to give it under the facts contained in this record. The defendant did not admit the killing, but, upon the contrary, denied it. And it appears that the trial court took the view that under those circumsances there could be no question of self-defense. There appear to be cases which so hold, but in nearly, or quite, all of them there was an entire lack of evidence that the killing was justifiable. The proper rule appears to be that, where there is evidence that would support a finding of self-defense, the instructions should cover that feature of the case, notwithstanding the defendant's testimony that he did not do the killing. *Reed* v. *State,* 40 N. E. (Ind.) 525; *Morris* v. *Commonwealth,* 46 S. W. 491; *Gatliff* v. *Commonwealth,* 107 S. W. 739.

This court recognized the principle governing in such cases in the case of *Cooper* v. *State,* 86 Ark. 30, where the court said that the jury was not bound to accept all the testimony of any witness, or all of the theory of the State or of the defendant, but may find the truth to lie partly on one side and partly on the other, and that when such is the case, it is right and proper for the court to submit an instruction covering any phase of the evidence which may be fairly deduced partly from one side and partly from the other.

The testimony here which is said to furnish support for the instruction on the question of self-defense is that of the witness Morris. This witness testified that a disagreement arose between Wise and Gibson over the action of Gibson in taking chips out of a jack-pot to pay for whiskey which the parties were drinking. Wise questioned Gibson's right to do so, and Gibson became angered and called Wise a "damn crook" and a number of other very vile names, and that Gibson got up from the table at which they had been playing cards and drew his pistol as he did so, and that as Gibson drew his gun Wise "dropped his hand down like that (indicating his hip pocket)."

Giving this testimony of Morris its highest probative value, it would appear that Wise made a demonstration as if he was about to draw his own weapon, and the testimony shows that he was armed. But it also appears that Wise only did this after he had been vilely abused by Gibson who had his pistol in his hand, and before taking the pistol in his hands he had it in his lap.

The instruction set out was, therefore, incorrect, because it did not take into account the duty of Gibson to abandon the difficulty which he had himself brought on. We have many cases to the effect that one can not bring on a difficulty, and then kill the person whom he has thus assailed and plead self-defense in justification, without having first made an honest attempt, in good faith, to withdraw from the combat. *Atkins* v. *State,* 16 Ark. 568; *Blair* v. *State,* 69 Ark. 558; *Velvin* v. *State,* 77 Ark. 97; *Wheatley* v. *State,* 93 Ark. 409; *Ferguson* v. *State,* 95 Ark. 428; *Taylor* v. *State,* 99 Ark. 576; *Manasco* v. *State,* 104 Ark. 397. Having abused Wise and made a threatening demonstration against him, Gibson had no right to fire the fatal shot without having first made the effort required by the law to withdraw from the combat; and, as the requested instruction wholly ignored this duty on the part of Gibson, no error was committed in refusing it. If appellant wished the law of this subject stated to the jury, he should have asked a correct instruc-

tion, but no other instruction on this subject was requested.

Finding no prejudicial error, the judgment of the court below is affirmed.