## McDONALD v. STATE.

### Opinion delivered September 29, 1924.

1.  LARCENY—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of having stolen cattle.

2.  LARCENY—RECENT POSSESSION OF STOLEN PROPERTY.—Recent possession of stolen property by the accused, unexplained, is sufficient to warrant the jury in returning a verdict of guilty.

3.  LARCENY—INSTRUCTION—WEIGHT OF EVIDENCE.—An instruction that "the possession of property recently stolen without reasonable explanation of that possession, is evidence which goes to you for your consideration under all the circumstances in the case, to be weighed as tending to show the guilt of the one in whose hands such property is found, but such evidence alone does not imperatively impose upon you the duty of convicting, even though it be not rebutted," is not objectionable as an instruction upon the weight of evidence or as making it the imperative duty of the jury to convict upon proof of unexplained possession of recently stolen property.

4.  CRIMINAL LAW—INVITED ERROR.—The accused will be deemed to have waived any error from the State going into a collateral matter where he had already gone into proof of the same matter with great particularity.

Appeal from Greene Circuit Court; *G. E. Keck,* Judge; affirmed.

*Jeff Bratton,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J. Sandy McDonald prosecutes this appeal to reverse a judgment of conviction against him for the crime of stealing cattle, in violation of the provisions of § 2490 of Crawford & Moses' Digest.

The first assignment of error is that the evidence is not legally sufficient to support a verdict of guilty. On the part of the State it was proved that M. G. Garmoth delivered a carload of cattle at the stock-pens of the Missouri Pacific Railroad Company in Paragould, Arkansas, to be shipped to St. Louis, Missouri. The cattle were delivered in the stock-pens on July 23, 1923, and on that night six head of the cattle were stolen. The owner of the cattle described them to the jury, and none

of the stolen cattle had horns except a brindle steer. About four days afterwards the owner found four head of the stolen cattle in the slaughter-pen of Ray Hester in Paragould. He also found the hides of the other two in the slaughter-pen.

Several witnesses for the State saw the defendant, Sandy McDonald, and Ray Hester driving some cattle in a westerly direction in the city of Paragould about 5:30 or 6 o'clock on the morning of July 28, 1923. There were five or six head of the cattle, and there had been a rain the night before. Most of the witnesses who saw the defendant and Hester driving the cattle on the morning in question were unable to describe the cattle. One of the witnesses stated that they were mostly red, but that there was one black one. Another witness stated that she did not remember the color of the cattle, but that some of them were dark, and that one of them was of a Jersey color.

Another witness testified that he helped deliver some cattle at the slaughter-pen of Ray Hester on the morning that the cattle in question were found there. When the witness got to the slaughter-pen with the cattle, there were already six head of cattle there. He did not remember the color of the cattle, but there were possibly one or two black ones in the bunch.

Two other witnesses testified that they went with the owner of the cattle when he found four of them and the hides of two others in the slaughter-pen of Hester.

The above is a summary of the testimony introduced by the State and relied upon for a conviction in this case. When it is considered in the light most favorable to the State, together with all legal inferences that may be drawn from it, we think that the evidence is legally sufficient to warrant a conviction.

It clearly appears that six head of cattle belonging to M. G. Garmoth were stolen from the cattle-pens of the Missouri Pacific Railroad Company at Paragould, Arkansas, on the night of July 23, 1923. Some time during the morning of July 28, 1923, four head of these cattle and

the hides of two others were found at the slaughter-pen of Ray Hester in Paragould, Arkansas. Between five and six o'clock on the same morning the defendant and Ray Hester were seen driving five or six head of cattle along the streets of the city of Paragould.

Another person testified that he delivered some cattle at the slaughter-pen later in the morning, and traveled along the same route as that said to have been traveled by the defendant and Hester. There were already six head of cattle in Hester's slaughter-pen when he got there with his bunch.

This testimony shows that Hester in some way got possession of the stolen cattle. The uncontradicted evidence also shows that the defendant and Hester were seen driving five or six head of cattle through the streets of Paragould. It is fairly inferable that the cattle they were driving were stolen cattle. It is true that the witnesses who saw them driving the cattle were not able to describe them accurately. One of the witnesses, however, said that he thought that there was one or two black ones in the bunch. Another witness said that some of them were dark and one of them was a Jersey color. The owner described the stolen cattle as being one black white-faced steer, one black white-faced heifer with white streaks, one roan speckled cow, one red cow, one brindle steer, and one whose description he did not remember.

It had rained the night before, and the witnesses who delivered the second bunch of cattle on the morning that the stolen cattle were found in Hester's slaughter-pen testified that they had traveled over the same route that the defendant and Hester had traveled the same morning. Six head of cattle were in the slaughter-pen when they brought in the second bunch. It is not claimed that any of the second bunch were the stolen cattle. The only other bunch of cattle in the slaughter-pen on that morning were the stolen cattle. Hence it is fairly inferable, when all the facts and circumstances of the case are considered together, that the cattle that the defendant and

Hester drove in the direction of the slaughter-pen early in the morning of the 28th day of July, 1923, were the stolen cattle. This was only four days after the cattle had been stolen. No attempt whatever was made by the defendant to explain his possession of the cattle.

We have repeatedly held that the recent possession of stolen property by the defendant unexplained, when taken in connection with the other circumstances similar to those proved in this case, is sufficient to warrant the jury in returning a verdict of guilty. *Spivey* v. *State,* 133 Ark. 314; *Johnson* v. *State,* 161 Ark. 111, and *Papan* v. *Nahay,* 106 Ark. 232.

The next assignment of error is that the court erred in giving instruction No. 3, which reads as follows: ''You are instructed that the possession of property recently stolen, without reasonable explanation of that possession, is evidence which goes to you for your consideration under all the circumstances in the case, to be weighed as tending to show the guilt of the one in whose hands such property is found, but such evidence alone does not imperatively impose upon you the duty of convicting, even though it be not rebutted.''

It is insisted that the use of the words, ''evidence which goes to you for your consideration under all the circumstances in the case, to be weighed as tending to show the guilt'' of the defendant, was an instruction on the weight of the evidence.

This court has held that similar language in an instruction means no more than telling the jury that such evidence may be considered for the purpose of determining the guilt or innocence of the defendant. *Hogue* v. *State,* 93 Ark. 316.

The next objection to the instruction is that it is upon the weight of the evidence because it instructs the jury that the possession of property recently stolen, without explanation of the possession, makes it the imperative duty of the jury to convict, and thus becomes a charge upon the weight of the evidence. We do not think so. A fair interpretation of the instruction would warrant the

jury in convicting the defendant, but does not tell it as a matter of law that it must convict if it should find that the stolen cattle had been recently found in the possession of the defendant, without explanation on his part. In fact, the instruction tells the jury that the finding of such fact does not make it the imperative duty of the jury to find the defendant guilty. The court has no right to tell the jury what effect it should give the evidence, and it did not do so in this case.

On the other hand, instead of pointing out what inferences the jury should draw from particular facts or circumstances, it left the whole matter of the guilt or innocence of the defendant to the jury, and left the jury free to draw whatever inference it should see fit from the fact that it might find that the stolen cattle were found in the possession of the defendant soon after the larceny was committed, without explanation on his part. *Spivey* v. *State,* 133 Ark. 314, and *Pearrow* v. *State,* 146 Ark. 182.

It is next insisted that the court erred in not giving certain instructions asked by the defendant. We do not deem it necessary to set out these instructions. The matters embraced were either covered by instructions given by the court, or the instructions as drawn were argumentative in form and calculated to mislead the jury. The court gave full and fair instructions upon the question of reasonable doubt and the weight and credibility to be given to the witnesses. It also gave an instruction on circumstantial evidence, and read to the jury § 2490 of Crawford & Moses' Digest relating to the stealing of cattle.

The jury was specifically told that it must find from the evidence, beyond a reasonable doubt, that the defendant, on the night in question, unlawfully and feloniously stole and carried away the cattle in question, before it could find him guilty.

Finally it is insisted that the court erred in allowing the State to prove that Ray Hester was charged with grand larceny, and on that account had fled the State.

Under the circumstances of this case, this amounted to no more than what is generally called invited error. The defendant had already shown by one witness that he had seen Ray Hester buy some cattle from a stranger about the time of the transaction in question. He was allowed to tell how much Hester paid the stranger for the cattle, and everything that he knew about the transaction. Then T. C. Hester was put upon the stand by the defendant and was allowed to describe in detail the movements of Ray Hester during the whole of the early morning of July 28, 1923. He testified that Ray Hester had bought some cattle on that morning.

On cross-examination the prosecuting attorney asked this witness if Ray Hester did not leave immediately after his trial in the examining court and had not been back in the State since. The witness stated that Ray Hester was in the State of California at the time of the trial, and had been there ever since; that he left the State on the same day that he had been discharged in the examining court.

Thus it will be seen that the testimony in question was first elicited on cross-examination, after the defendant had introduced testimony describing with particularity the movements of Ray Hester on the morning that he was seen with the defendant driving cattle in the streets of Paragould in the direction of his slaughter-pen.

He was also permitted to testify that Hester had bought some cattle from a stranger on that morning. It will be remembered that this was the same morning that the stolen cattle were found in Hester's slaughter-pen. Under these circumstances the defendant will be deemed to have waived any error which resulted from going into collateral matters, because he had already gone into proof of these same matters with great particularity. *Mitchell* v. *State,* 86 Ark. 486, and *Tarkington* v. *State,* 154 Ark. 365.

We have carefully examined the record, and find no prejudicial errors in it. Therefore the judgment will be affirmed.