ELLIS *v.* STATE.

Opinion delivered January 24, 1927.

1. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain conviction of manufacturing liquor and mash and of possessing a still and stillworm.

2. CRIMINAL LAW—EVIDENCE.—In a liquor prosecution, where defendant testified that he and another were at a still from which they fled as an officer approached, and that his companion said he was under suspended sentence and did not want to be caught, it was not error to admit the officer's testimony that he had not seen defendant's companion since the day he ran off.

3. CRIMINAL LAW—EVIDENCE—RES GESTAE.—In a prosecution for manufacturing liquor, admission of the testimony of a State's witness as to finding defendant and another at a still, and as to what they said and did, *held* admissible as part of *res gestae*.

4. CRIMINAL LAW—HARMLESS ERROR.—In a prosecution for manufacturing liquor, where a State's witness testified that defendant's

father appeared at the still shortly after defendant and his companion had fled and called out to such companion, a question asked defendant's father whether he knew that such companion was in the habit of making liquor and was looking for him, though improper in form, was not prejudicial in view of the witness' negative answer.

5.  CRIMINAL LAW—IMPROPER TESTIMONY—INVITED ERROR.—In a prosecution for manufacturing liquor, examination of defendant's father as to whether he knew that defendant's companion was in the habit of making liquor was invited by defendant's statement that such companion, when he fled at the sight of the officer, stated that he was under a suspended sentence, and had to run.

6.  CRIMINAL LAW—STATEMENT OF COURT—WEIGHT OF TESTIMONY.— In a prosecution for manufacturing liquor, where, during an argument of defendant's counsel that the jury could convict only by guessing that defendant had some connection with possession of the still, the court's remark to counsel that the word "guess" was not proper, and that, if there was no evidence at all, the case would not be on trial, *held* not an invasion of the jury's province.

Appeal from Pulaski Circuit Court; *Abner McGehee,* Judge; affirmed.

*Snodgress & Snodgress,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

WOOD, J. The appellant and one Wesley Roller were indicted in three separate indictments for the crimes of manufacturing intoxicating liquor, manufacturing mash, and possessing a still and stillworm, contrary to the statute in such cases made and provided. By consent the cases were consolidated for trial, and the appellant was convicted and sentenced by judgment of the court to one year's imprisonment in the State Penitentiary in each of the three causes, from which judgments he appeals. No objection is raised to the validity of the indictments.

J. C. McKenzie testified that he was the constable of Ellis Township, in Pulaski County, and, as such, arrested the appellant in that township. The witness located a still where appellant was at the time. The still was about 200 yards from the mash barrel. The still and mash were located on Clark's place, in a very

dense thicket. It was a copper still. Witness found altogether twelve mash barrels. He located the mash barrels a week or two before he found the still. The still was in operation when witness found it. They had run off a gallon of whiskey that morning. The appellant and another boy were at the still. Witness did not see them until they ran away. Witness followed them until they got in the field. The other man with appellant was Wesley Roller. Witness went back to the still and hid himself in the bushes, to see what would happen. In a few minutes Horace Ellis, father of the appellant, came up the creek and got up right near the still, and called, "Wesley, Wesley!" and witness stepped out and arrested him. He was twenty or thirty feet from the still. There was a shirt at the still that appellant's father stated belonged to the appellant. Appellant had on an undershirt and no top shirt when he ran away. There were one or two kegs and a big eight or ten-gallon stone jar and two half-gallon fruit jars there. The whiskey was running out of the still into a half-gallon vessel, which was nearly full. Witness did not see anybody else at all around the still. Witness found, at another place, the mash barrels in an awful thicket. Two or three days afterward appellant came down to the justice of the peace and gave up. When witness first saw the appellant and Wesley Roller, they were ten or twelve feet from the still. Witness had known appellant all his life. He lived something like three and a-half miles from witness.

On cross-examination appellant's counsel asked the witness the following question: "Did Wesley (Roller) come back to the justice of the peace in two or three days?" Witness answered, "Ernest did—Wesley didn't." On redirect examination witness, over the objection of appellant, stated that he had never seen Wesley Roller since the day he ran off, and witness did not know whether he was in the county or not. This all occurred in Pulaski County about June 18, 1926.

Another witness testified to the effect that, at the request of McKenzie, on June 18, 1926, he went to assist

McKenzie about getting out a still, and found the still running. His testimony substantially corroborated the testimony of the other witness in regard to finding the stillworm, still, and mash. This witness did not know anything about the defendant having anything to do with the still.

Appellant testified in his own behalf, and admitted that he was at the still on the day designated, but stated that he had nothing to do with it. A man by the name of Wilkerson had offered him $10 to find two cows, and he had been looking for these cows at the time. Wesley Roller, who had married appellant's sister, was with appellant at the time. They had just walked down there to the still—had never been there before. Witness denied that he had a shirt at the still. He had a white shirt on, with no sleeves in it.

During the argument of counsel for appellant he stated to the jury that they could only convict the appellant by guessing that he had some connection with the possession of the still or manufacturing of mash or liquor. The court remarked to the counsel that the word "guess" used by him was not a proper one, and that the jury should not guess at the guilt or innocence of a defendant; that, if there was no evidence at all, the case would not be on trial, and that it was competent to convict on circumstantial evidence as well as direct evidence if the facts and circumstances warranted a verdict under the instructions given. Witness also stated, on cross-examination, without objection, that he didn't know where Wesley Roller was at that time.

The father of the appellant testified that, when he got near the still on the day designated by witness McKenzie for the State, he called "Wesley, Wesley!" On cross-examination he was asked, "You just knew Wesley Roller was in the habit of making liquor, and were looking for him?" to which the witness replied, "No."

The appellant contends that there is no testimony to sustain the verdict. The testimony set out above speaks for itself, and it is sufficient to warrant the jury in find-

ing appellant guilty. The explanation appellant gave
of his presence at the still did not explain it to the
satisfaction of the jury, and the jury are the sole judges
of the weight to be given his testimony. See *Stover* v.
*State, ante,* p 76.

The court did not err in permitting the witness for
the State, on redirect examination, to testify that he had
never seen Wesley Roller since he ran off that day, and
that he did not know whether he was in the county or
not. Appellant himself testified that Wesley Roller was
with him that morning at the still, and, without objection,
on cross-examination he stated that, when the officer
came up, Wesley said: "There comes McKenzie. I am
under a suspended sentence, and don't want to be
caught," and ran away, and appellant ran with him.

There was no prejudicial error in the ruling of the
court in permitting the witness McKenzie, for the State,
to testify that he had not seen Wesley Roller since he ran
away, and that he didn't know whether he was in the
county or not. The appellant himself, on cross-examina-
tion of witness, had elicited the fact that Wesley
Roller had not come back to the justice of peace court
after he ran away. The testimony of this witness, on
redirect examination, as to whether or not he had seen
Roller, was along the same line of examination as that
which the appellant had pursued with reference to the
whereabouts of Roller. Appellant himself had testified
that Roller said that he was under a suspended sentence,
and had run away. It was not error for the court to permit
witnesses for the State to testify that they found appel-
lant and Wesley Roller at the still and what they said and
did at the time. This was a part of the *res gestae.* They
were jointly charged with the commission of these several
offenses, and, as appellant concedes, Roller was in com-
pany with him at the still on that day, and they ran away
from same at the approach of the officer at the same time,
Wesley Roller remarking that he was under a suspended
sentence and had to run. The appellant is in no attitude to
complain of the testimony, because, without objection, he

had elicited testimony tending to prove that Roller had fled from the still and had not returned for his examination before the justice court. There was no error, under the circumstances, in permitting the State to show that Roller had not been seen since he fled on the day the officer saw him at the still.

There was no prejudicial error in the question asked appellant's father concerning Wesley Roller. While this question, in the form set forth, was improper, the witness answered it in the negative, and it therefore could not have been prejudicial to the appellant. Besides, the appellant's own testimony, as we have stated, was to the effect that Roller himself, when he fled at the sight of the officer, stated that he was under a suspended sentence and had to flee. All this examination, if improper, was in the nature of invited error, and the appellant cannot complain thereof. *Tarkington* v. *State,* 154 Ark. 365, 242 S. W. 830; *McDonald* v. *State,* 165 Ark. 411, 264 S. W. 961.

The remarks of the court to the attorney for the defense were not an invasion of the province of the jury, as these remarks cannot be construed by the court as an expression of an opinion by the court on the weight of the evidence. Considered as a whole, the remarks were only tantamount to telling the jury that it would be justified only in finding the defendant guilty if the evidence, either direct or circumstantial, warranted such verdict, otherwise not.

The record shows no reversible error, and the judgment must therefore be affirmed.