Cite as 2019 Ark. App. 543

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-260

| | |
|---|---|
| ARTHUR GRAY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** November 20, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-16-3605]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>REVERSED AND REMANDED |

## RITA W. GRUBER, Chief Judge

Appellant Arthur Gray was convicted in a bench trial of both aggravated assault on a family member as well as aggravated assault and sentenced to concurrent terms of thirty-six months' probation for pointing a loaded 9mm pistol at his sister Angela Walker and her husband, Elvester Walker. Mr. Gray appeals claiming that the circuit court erred as a matter of law by refusing to consider his defense of justification. We reverse and remand for a new trial.

On September 5, 2016, Mr. Gray was staying with his sister Mary Redden when he got into an argument with her four sons while Mary was out. The children called Mary's brother Gaddius, who went to her home to try to resolve the dispute. After arriving at the house and arguing with Mr. Gray, Gaddius called their older sister Angela Walker to help.

When Mary got home, shortly before the Walkers arrived, she asked Mr. Gray to leave the house five or six times. He refused, saying that he was not going anywhere.

Angela testified that Mr. Gray was in the yard arguing with Mary when she and Elvester arrived. She said that Mr. Gray put a bag in his car and started walking back into Mary's house when she asked him to "get his stuff and leave." She said that she and Mr. Gray were talking near the back of Mr. Gray's car. According to Angela's testimony, Elvester was in the Walkers' truck. Angela testified that Elvester and Mr. Gray were "exchanging words," and then Mr. Gray "pulled his gun," prompting her to jump in front of the gun to shield Elvester. She testified that she heard the "click" of the 9mm pistol as he was "cocking it back" and that she was probably five to seven feet from him. She said he pointed the gun at her for probably a minute and a half. She told Mr. Gray, "Junior, you're going to jail. We're not going to tolerate this." She said she asked him to leave because Mary has four small children and she did not want the police at the house causing a commotion. After he pointed the gun at her, she called 911.

Mary testified that Mr. Gray had been staying with her for a few weeks and that he and her children had "gotten into it" on the evening of September 5 while she was away from the house. Mary said that when she got home, she asked Mr. Gray to leave at least five or six times. He would not leave. She said that eventually the Walkers pulled into the driveway, were upset, and asked Mr. Gray what was going on. Mary testified that she "guessed" Mr. Gray felt "threatened in some type of way" because he told the Walkers not to "walk up on him." She said that Mr. Gray was near his car and he grabbed his side where his gun was holstered. She said it was dark and she did not know if he pulled the gun out,

2

but she heard a lot of clicking like the sound of a gun being cocked. She said that she continued to tell him to leave, he refused, and she called 911. She testified that Mr. Gray and the Walkers were arguing, that no one "took a swing at anybody," and that the Walkers did not "get in his face or anything." She estimated the distance between Mr. Gray and the Walkers as forty feet but then explained to defense counsel during cross-examination that they were closer than "you and I are."

Mr. Gray also testified, denying that he had pointed a gun at anyone. He said that he had been putting his bag in his car when the Walkers arrived. He said that he felt threatened because Elvester was drunk, irrational, and walking toward him in "an aggressive way." He said that he put his right hand on his right hip, stepped back, and told them, "Don't walk up on me."

The court found Mr. Gray guilty of aggravated assault for his actions against Elvester and guilty of aggravated assault on a family member for his actions against Angela. Mr. Gray filed this appeal challenging the court's refusal to consider his justification defense.

Mr. Gray was convicted for purposely, "under circumstances manifesting extreme indifference to the value of human life," displaying a firearm "in such a manner that create[d] a substantial danger of death or serious physical injury" to Angela and Elvester. Ark. Code Ann. § 5-13-204(a)(2) & § 5-26-306(a)(2) (Repl. 2013). Justification is a permitted defense under our criminal code. Ark. Code Ann. § 5-2-602 (Repl. 2013).[1] On appeal, Mr. Gray contends that the circuit court erred as a matter of law for refusing to consider his defense

---

[1]Arkansas Code Annotated section 5-13-204(c)(2) also specifically provides that its provisions do not apply to a person acting in self-defense.

of justification by ruling that he could not present the inconsistent defenses of a general denial ("I did not commit the criminal conduct") and justification ("I was justified in committing the criminal conduct"). Because he argues that the court erred as a matter of law, he claims this court should review the issue de novo. He also argues that the same legal principles governing a jury trial govern a bench trial and therefore that a defendant is entitled to a justification defense if there is any evidence to support it, even if the defendant testified that he did not commit the criminal conduct. He cites *Gibson v. State*, 135 Ark. 520, 205 S.W. 898 (1918), and *Karnes v. State*, 159 Ark. 240, 252 S.W. 1 (1923), to support his argument.

The issue of a justification defense arose during Mr. Gray's testimony after he testified that he had put his hand on his hip because Elvester was drunk and walking toward him in an aggressive way.

| DEFENSE COUNSEL: | Do you have an opinion as to Mr. Walker's reputation for peacefulness or violence? |
|---|---|
| PROSECUTOR: | Your Honor, I'm going to object. First of all, the State was never put on notice that this was a self-defense claim. Furthermore, I—I'm just objecting. |
| DEFENSE COUNSEL: | I think that I did say in open court with [the previous prosecutor] there was justification to his actions. |
| . . . . | |
| COURT: | I get that. And I think you're going to have to establish how he knew about all this other stuff. He's only known him for eight years, so he didn't know before. There has been no—he said, I've known him for eight years. So if it happened prior to that, then he doesn't . . . You have to establish that. I mean, you can't just ask him and say |

4

how do you know about his peacefulness. . . . You have to lay a foundation is what I'm saying.

The court then sustained several hearsay objections regarding what someone told Mr. Gray about Elvester's criminal record. At that point the following colloquy occurred.

DEFENSE COUNSEL:      Did we look up his felony conviction?

MR. GRAY:      Yes, sir.

DEFENSE COUNSEL:      And what was that for?

COURT:      Hold on a second. Is it past ten—

PROSECUTOR:      Your Honor, again, I'm going to object. Reason being, this is a—any priors that are over ten years old should not come in under Rule, I believe, 609.

COURT:      Okay.

DEFENSE COUNSEL:      Well, this would go to his justification for putting his hand on his firearm. It would go to his mental state as to why he did that for his own protection.

COURT:      Well, putting his hand on the firearm is not a—the problem. It's the pointing the gun at them, not pulling the firearm.

PROSECUTOR:      Your Honor, and if I may, I believe this is where just—just to insert this. I believe that this is where the confusion comes in. It appears that the Defendant's position throughout all the filing, where his testimony has been general denial, but [Defense Counsel] is trying to kind of twist this around into a justification claim. I believe they need to stick to one defense or the other.

COURT:      And that's what I'm saying. If you just did this, that's a general denial. But if he did this, that's justification is what you're trying to establish, that's what I'm trying to get you—that's what I'm trying to understand as well. I think the State is trying to say, which one are you choosing?

5

DEFENSE COUNSEL:      I've never asked him and he's never said he pulled the firearm. I wanted justification for his actions, which is, I believe, how I phrased it at our omnibus hearing. And the actions he took were justified. . . . So if the Court finds that there's some type of assault by touching a weapon—

COURT:                I didn't—I didn't say that.

. . . .

DEFENSE COUNSEL:      —he put his hand on his firearm for protection. And as he showed the Court, put his other arm out. That's all we're saying.

PROSECUTOR:           Your Honor, I believe that's a general denial. And he's not entitled to a justification defense at that point.

COURT:                I'm going to have to agree with that.

*Gibson* and *Karnes* hold that where there is evidence that would support a finding of self-defense, a jury instruction is appropriate "notwithstanding the defendant's testimony" that he did not commit the crime. *Gibson*, 135 Ark. at 526, 205 S.W. at 900; *Karnes*, 159 Ark. 240, 246, 252 S.W. 1, 3 (holding that "if testimony of a substantial nature presents a defense, the defendant is entitled to have an instruction given on the subject, although it contradicts his own testimony"). These cases remain the law. Indeed, our supreme court has recently addressed this premise in the context of entrapment, abolishing the rule that a defendant cannot deny the commission of an offense and simultaneously assert the defense of entrapment. The court held that a defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, even if the defendant denies one or more elements of the crime." *Smoak v. State*, 2011 Ark. 529, at 10, 385 S.W.3d 257, 263.

Because the circuit court committed an error of law in ruling that Mr. Gray was required to choose between the defenses of general denial and justification, we reverse and remand for a new trial. We express no opinion about whether sufficient evidence of justification exists in this case.

Reversed and remanded.

VIRDEN and HARRISON, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.